[No. A084298. First Dist., Div. Three. Dec. 21, 2000.]

CERIDIAN CORPORATION, Plaintiff and Respondent, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

**COUNSEL**

Bill Lockyer, Attorney General, Randall P. Borcherding and Julian O. Standen, Deputy Attorneys General, for Defendant and Appellant.

Preston, Gate & Ellis, James P. Kleier and Julie A. Aguilar for Plaintiff and Respondent.

Morrison & Foerster, Thomas H. Steele, Amy L. Silverstein and Mariah A. Panza for Wells Fargo & Company as Amicus Curiae on behalf of Plaintiff and Respondent.

Wm. Gregory Turner for California Taxpayers' Association as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**PARRILLI, J.**—In this case we hold that Revenue and Taxation Code section 24410 violates the commerce clause of the United States Constitution.

The Franchise Tax Board of the State of California (Board) appeals from a judgment awarding a refund to Ceridian Corporation (Ceridian). The trial court ruled that the statute governing taxation of insurance company dividends paid to major corporate stockholders is unconstitutional. The Board claims this ruling was erroneous, and also contends that even if the statute is invalid, a tax refund is not the proper remedy. We agree with the trial court on both issues and affirm the judgment.

### I. FACTS

Ceridian, formerly Control Data Corp. (Control Data), sought a refund of corporate franchise taxes imposed upon Control Data for the income years 1978 through 1982, and upon Commercial Credit Company (Commercial Credit) for the income years 1978 and 1979. Ceridian is the successor to all causes of action and rights asserted herein on behalf of Control Data and Commercial Credit. Ceridian is a Delaware corporation, with its commercial domicile in Minnesota. Commercial Credit is a Delaware corporation with its commercial domicile in Maryland. During the income years at issue, Commercial Credit was a wholly owned subsidiary of Control Data.

During the income years 1978 through 1982, Control Data was engaged in the business of manufacturing and selling computers, computer systems and peripheral equipment, and in providing computer-related services. Commercial Credit was engaged, through its subsidiaries, in the business of providing financial services and insurance to businesses and individual customers.

Control Data and Commercial Credit filed separate California Bank and Corporation Tax returns for themselves and their wholly owned groups for 1978 and 1979. Thus, each entity calculated its own business income and

apportioned income to California based upon the averages of its California property, payroll and sales as a percentage of total property, payroll and sales. For the tax years 1980 through 1982, Control Data and Commercial Credit filed California corporate franchise tax returns on the combined report method. Under this method, the taxable business income for Control Data and Commercial Credit was combined, and then apportioned to California based upon the averages of their combined California property, payroll and sales as a percentage of total combined property, payroll and sales.

In 1985, the Board recomputed the California tax liabilities of Control Data and Commercial Credit for the income years 1978 and 1979 on the basis that a combined report should have been filed, rather than separate returns. Additionally, the Board determined that business income included on these combined returns, as well as the combined returns filed for the 1980 through 1982 years, should have included approximately $78 million in dividends received from the insurance company subsidiaries. Ceridian paid the disputed amount and exhausted its administrative remedies.

On December 19, 1996, Ceridian filed a complaint for refund of taxes, alleging that taxation of Commercial Credit's insurance subsidiary dividends violated due process and the commerce clause of the federal Constitution. The case came before the trial court on stipulated facts. On May 7, 1998, the court issued its tentative decision, finding that Revenue and Taxation Code section 24410 is facially discriminatory and violates the commerce clause. The court awarded Ceridian a tax refund in the stipulated amount of $556,442. Judgment was entered accordingly (Code Civ. Proc., § 632; Cal. Rules of Court, rule 232), and the Board filed a timely notice of appeal.

## II. DISCUSSION

### A. *Constitutional Validity of Section 24410*

#### 1. *The Revenue and Taxation Code*[1]

With certain exceptions, every corporation doing business in California pays an annual franchise tax measured by its net income. (§ 23151.) When that income is derived from or attributable to sources both within and outside the state, it is apportioned in accordance with the Uniform Division of Income for Tax Purposes Act (§ 25120 et seq.). (§§ 25101, 25121.) The act's allocation formula is based on the proportion of a corporation's total property, payroll and sales which are located in the state. (§§ 25128-25136.) In

---

[1]Unless otherwise indicated, all further statutory references are to the Revenue and Taxation Code.

computing its taxable income, a corporation may deduct "[d]ividends declared from income under franchise, alternative minimum, or income taxes." (§§ 24401, 24402.) █ The purpose of this dividend deduction is "to avoid double taxation *at the corporate level* of income which has already been subjected to California taxation in the hands of the dividend-declaring corporation. [Citations.]" (*Safeway Stores, Inc. v. Franchise Tax Board* (1970) 3 Cal.3d 745, 749-750 [91 Cal.Rptr. 616, 478 P.2d 48], italics in original (*Safeway Stores*).)

In lieu of the corporate franchise tax, insurance companies pay an annual tax based on the amount of gross premiums, less return premiums, received upon business done in this state. (§ 12221; Cal. Const., art. XIII, § 28.) The statute at issue in this case allows a deduction in computing taxable income (§ 24401) for "Dividends received by a corporation commercially domiciled in California, during the income year from an insurance company subject to tax imposed by [the 'Insurance Taxation' part] of this division at the time of the payment of the dividends and at least 80 percent of each class of its stock then being owned by the corporation receiving the dividend." (§ 24410, subd. (a).) The deduction is "limited to that portion of the dividends received which are determined to be paid from income from California sources determined pursuant to subdivision (c)." (§ 24410, subd. (b).) The apportionment formula set out in subdivision (c) uses the average of three factors—gross receipts, payroll, and property—to determine an insurance company dividend payor's gross income from California sources, which is then used to determine the amount of dividends paid from California sources.[2] The parties herein stipulated that for purposes of subdivision (b), "for each of the

---

[2]In pertinent part, section 24410 establishes a deduction for: "(a) Dividends received by a corporation commercially domiciled in California, during the income year from an insurance company subject to tax imposed by Part 7 (commencing with Section 12001) of this division at the time of the payment of the dividends and at least 80 percent of each class of its stock then being owned by the corporation receiving the dividend. [¶] (b) The deduction under this section shall be limited to that portion of the dividends received which are determined to be paid from income from California sources determined pursuant to subdivision (c). [¶] (c) Dividends paid from California sources shall be determined by multiplying the amount of the dividends by an apportionment factor equal to the ratio of gross income from California sources to all gross income of the company. Gross income from California sources equals total gross income less dividends from other insurance companies multiplied by the average of the following three factors: [¶] (1) A gross receipts factor, the denominator of which shall include all receipts, other than dividends from another insurance company, regardless of the nature or source from which derived. The numerator of which shall include all gross receipts, other than dividends from another insurance company, derived from or attributable to this state. With respect to premiums, only receipts which were subject to tax under Part 7 (commencing with Section 12001) of this division, shall be included in the numerator, and with respect to income from intangibles they shall be attributable to the commercial domicile of the insurance company. [¶] (2) A payroll factor determined under the provisions of the Uniform Division of Income for Tax Purposes Act, Chapter 17, Article 2 of this part. [¶] (3) A property factor, determined under the provisions of the Uniform Division of Income for

years at issue, the average percentage of the payroll, property and gross receipts in California of each insurance company paying dividends" to Ceridian is 1.77 percent.

## 2. *The Commerce Clause*

■ The Constitution gives Congress the power to regulate commerce between the states. (U.S. Const., art. I, § 8, cl. 3.) "Though phrased as a grant of regulatory power to Congress, the [Commerce] Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce. [Citations.]" (*Oregon Waste Systems, Inc. v. Department of Environmental Quality of Ore.* (1994) 511 U.S. 93, 98 [114 S.Ct. 1345, 1349, 128 L.Ed.2d 13] (*Oregon Waste*).) "This 'negative' aspect of the Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors. [Citations.] Thus, state statutes that clearly discriminate against interstate commerce are routinely struck down [citations], unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism [citation]." (*New Energy Co. of Indiana v. Limbach* (1988) 486 U.S. 269, 273-274 [108 S.Ct. 1803, 1807-1808, 100 L.Ed.2d 302].) Supreme Court cases "leave open the possibility that a State may validate a statute that discriminates against interstate commerce by showing that it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives. [Citations.] This is perhaps just another way of saying that what may appear to be a 'discriminatory' provision in the constitutionally prohibited sense—that is, a protectionist enactment—may on closer analysis not be so. However it be put, the standards for such justification are high. [Citations.]" (*Id.* at pp. 278-279 [108 S.Ct. at p. 1810]; see also *Hughes v. Oklahoma* (1979) 441 U.S. 322, 337 [99 S.Ct. 1727, 1737, 60 L.Ed.2d 250] [facial discrimination invokes "strictest scrutiny.")

## 3. *Discriminatory Taxation*

■ Under the commerce clause, "a State may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State." (*Armco Inc. v. Hardesty* (1984) 467 U.S. 638, 642 [104

Tax Purposes Act provided for in Article 2 (commencing with Section 25120) of Chapter 17 of this part, provided that for the purposes of this paragraph the property factor shall include all intangible investment property, which intangible property shall be allocated to the commercial domicile of that insurance company. [¶] (4) Plus the portion of the dividends received from another insurance company determined to be paid from California source income pursuant to the formula set forth in paragraphs (1) through (3) based upon the receipts, payroll and property of that other insurance company."

S.Ct. 2620, 2622, 81 L.Ed.2d 540].) As it did below, the Board essentially concedes that subdivision (a) of section 24410, which allows only corporations "commercially domiciled" in California to deduct certain insurance company dividends from their taxable income, violates the commerce clause.[3] We agree that subdivision (a) violates the commerce clause because it limits the pertinent deduction to those corporations "commercially domiciled" in California. Thus, the only disputed issue in this case is whether subdivision (b), which limits the deduction to dividends "paid from income from California sources" also violates the commerce clause. We conclude that it does.

The trial court found section 24410, subdivision (b) "patently discriminatory," because "[o]n its face, this taxing scheme discriminates against the owner of insurance companies which do business in California, but retain their property and payroll in other states, on no basis other than their refusal to relocate their property and payroll to California." The Board contends, on the contrary, that subdivision (b) is a constitutionally valid means of avoiding double taxation, analogous to that provided for noninsurance subsidiaries by section 24402 (*ante*, p. 881). The Board claims subdivision (b) does not discriminate against or burden interstate commerce, but levels the playing field between corporate taxpayers receiving dividends from insurance companies doing business in California, which are subject to the gross premiums tax, and those receiving dividends from insurance companies doing business elsewhere, which are not. Were it not for subdivision (b), the Board argues, California would tax the former's income twice, and the latter's only once.

Both Ceridian and amici curiae Wells Fargo and California Taxpayers' Association (hereafter amici) vigorously assert that section 24410, subdivision (b) does *not* prevent double taxation. However, the parties' debate about whether subdivision (b) does or does not prevent double taxation misses the mark. The issue is not whether subdivision (b) serves some legitimate purpose, but whether it survives a commerce clause challenge. Significantly, the Board's authorities do not stand for the proposition that a commerce clause challenge would be overcome even if subdivision (b) prevented double taxation.

For example, the case of *United States v. Woodmansee* (N.D.Cal. 1975) 388 F.Supp. 36 (revd. in *United States v. Woodmansee* (9th Cir. 1978) 578

---

[3]However, the Board is constitutionally compelled to enforce the provision until it is judicially invalidated: "An administrative agency, . . . has no power: [¶] (a) To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional; [¶] (b) To declare a statute unconstitutional . . . ." (Cal. Const., art. III, § 3.5, subds. (a) & (b).)

F.2d 1302), cited for the proposition that "the protection of competition has been recognized as a legitimate goal of tax laws intended to avoid double taxation," concerns a *federal* statute and thus does not present a negative commerce clause problem. ▮ Moreover, a tax may violate the commerce clause even if it has no discriminatory goal or intent, if it is facially discriminatory, or has the *effect* of unduly burdening interstate commerce. (*Amerada Hess Corp. v. N.J. Taxation Div.* (1989) 490 U.S. 66, 75 [109 S.Ct. 1617, 1622-1623, 104 L.Ed.2d 58].) "Absent a compelling justification . . . a State may not advance its legitimate goals by means that facially discriminate against [interstate] commerce. [Citations.]" (*Kraft Gen. Goods, Inc. v. Iowa Dept. of Revenue and Finance* (1992) 505 U.S. 71, 81 [112 S.Ct. 2365, 2371, 120 L.Ed.2d 59].)

▮ The Board asserts that section 24402 (the general dividend deduction statute) "has been recognized as a valid means of avoiding double taxation." Accepting arguendo the Board's characterization of section 24402 as the "counterpart" of section 24410 (see *ante*, pp. 881-882, fn. 2), none of the cases cited by the Board concerned a commerce clause challenge, nor did they hold that section 24402 is a constitutionally valid means of avoiding double taxation. (See *Safeway Stores, supra,* 3 Cal.3d at pp. 749-750; *Great Western Financial Corp. v. Franchise Tax Bd.* (1971) 4 Cal.3d 1, 6 [92 Cal.Rptr. 489, 479 P.2d 993]; *Max Factor & Co. v. Franchise Tax Bd.* (1973) 35 Cal.App.3d 7, 11 [110 Cal.Rptr. 536].)

The Board relies primarily on a footnote in a 65-year-old Supreme Court case. In *Colgate v. Harvey* (1935) 296 U.S. 404 [56 S.Ct. 252, 80 L.Ed. 299, 102 A.L.R. 54] (*Colgate*), the court looked at a Vermont statute that "impose[d] a tax upon dividends earned outside the State of Vermont, while exempting from the tax dividends earned within the state," and also "discriminate[d] in favor of money loaned within the state as against money loaned outside the state[.]" (*Id.* at pp. 418-419 [56 S.Ct. at p. 254].) The court considered challenges to the statute under both the equal protection and privileges and immunities clauses of the Fourteenth Amendment. (*Id.* at p. 419 [56 S.Ct. at p. 254].) In a footnote, the court remarked, "The further point is made that the discrimination in respect of dividends and interest upon loans is a regulation of interstate commerce and therefore void under the commerce clause of the federal Constitution. But we mention this latter claim only to reject it as without merit, since clearly a tax upon income is not an interference with interstate commerce simply because the income is derived from a source within another state; and moreover, if there be any tendency to interfere with such commerce it is purely collateral and incidental. [Citations.]" (*Ibid.,* fn. 2 [56 S.Ct. at p. 254].) The court went on to uphold the dividends provision, but invalidate the interest provision (*id.* at p.

436 [56 S.Ct. at pp. 261-262]); it later overruled *Colgate* insofar as it had found therein a violation of the privileges and immunities clause (*Madden v. Kentucky* (1940) 309 U.S. 83, 93 [60 S.Ct. 406, 410-411, 84 L.Ed. 590, 125 A.L.R. 1383]).

Later still, a federal appeals court rejected the appellants' reliance on footnote 2 of *Colgate, supra*, 296 U.S. at page 419. The appeals court noted that Supreme Court decisions in the half-century after *Colgate* was decided confirmed the district court's finding that *Colgate*'s "collateral" or "direct-indirect" test had been replaced by "the more realistic inquiry of whether a law 'substantially affects' interstate commerce." (*Dominion Nat. Bank v. Olsen* (6th Cir. 1985) 771 F.2d 108, 111.) A concurring judge went further, asserting that the *Colgate* commerce clause analysis, emphasizing whether a state directly taxed interstate commerce rather than whether it created a competitive advantage for local business, "has been overruled *sub silentio*" and "no longer is good law." (*Id.* at pp. 118, 119 (conc. opn. of Contie, J.).)

### 4. *Subdivision (b) violates the Commerce Clause*

██ Under modern Supreme Court jurisprudence, a tax scheme may survive a commerce clause attack only when it "is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, *does not discriminate against interstate commerce*, and is fairly related to the services provided by the State." (*Complete Auto Transit, Inc. v. Brady* (1977) 430 U.S. 274, 279 [97 S.Ct. 1076, 1079, 51 L.Ed.2d 326], italics added.) "If a restriction on commerce is discriminatory, it is virtually *per se* invalid. [Citations.]" (*Oregon Waste, supra*, 511 U.S. at p. 99 [114 S.Ct. at p. 1350].) Nevertheless, a facially discriminatory tax scheme "may be saved from constitutional infirmity if it is a valid 'compensatory tax' designed simply to make interstate commerce bear a burden already borne by intrastate commerce." (*Associated Industries of Mo. v. Lohman* (1994) 511 U.S. 641, 647 [114 S.Ct. 1815, 1821, 128 L.Ed.2d 639].)[4] "To justify a charge on interstate commerce as a compensatory tax, a State must, as a threshold matter, 'identify the intrastate tax burden for which the state is attempting to compensate.' [Citation.] Once that burden has been identified, the tax on interstate commerce must be shown roughly to approximate—but not ex-ceed—the amount of the tax on intrastate commerce. [Citation.] Finally, the events on which the interstate and intrastate taxes are imposed must be 'substantially equivalent'; that is, they must be sufficiently similar in sub-stance to serve as mutually exclusive 'proxies' for each other. [Citation.]"

---

[4]The Board thus misspeaks when it cites *United States v. Salerno* (1987) 481 U.S. 739, 745 [107 S.Ct. 2095, 2100, 95 L.Ed.2d 697] for the proposition that a "facially discriminatory law" is one which cannot under any circumstances be applied constitutionally. It is, of course, a facially *unconstitutional* law which, by definition, cannot be constitutionally applied.

(*Oregon Waste, supra,* 511 U.S. at p. 103 [114 S.Ct. at p. 1352], internal brackets and ellipses omitted; see also *Fulton Corp. v. Faulkner* (1996) 516 U.S. 325, 332 [116 S.Ct. 848, 854, 133 L.Ed.2d 796] (*Fulton*).)

 Significantly, the Board is not contending that the tax scheme under consideration here can be justified as a "compensatory tax." Indeed, the Board has gone so far as to disclaim this position in its reply brief, stating that "*Fulton* is distinguishable because this appeal does not involve a tax on interstate commerce intended to compensate for the burden on intrastate commerce imposed by a different tax." ██ This concession is well taken, since the tax scheme at issue does not meet the three requirements for a "compensatory tax."[5]

 Instead, the Board's contention is that section 24410, subdivision (b) "does not discriminate against interstate commerce" and thus it is not even necessary to reach the "compensatory tax defense" issue. In other words, the Board is contending that the statute is not discriminatory because it avoids double taxation. This is a nonsequitur. If subdivision (b) discriminates against interstate commerce, as we conclude it does, then it is virtually per se invalid *unless* it is a component of a valid "compensatory tax." The fact that the tax scheme may serve some other laudatory purpose does not save it from a commerce clause challenge.

Both Ceridian and amici rely heavily on *Fulton, supra,* 516 U.S. 325. In that case, the United States Supreme Court considered a North Carolina statute that imposed a one quarter of 1 percent "intangibles" tax on the fair market value of corporate stock owned by North Carolina residents. However, North Carolina residents were allowed to calculate their tax liability under this provision by "taking a taxable percentage deduction equal to the fraction of the issuing corporation's income subject to tax in North Carolina." (*Id.* at p. 327-328 [116 S.Ct. at p. 852]) This figure was determined by

---

[5]First, to justify a tax scheme as "compensatory," *the state* has the responsibility to identify the intrastate tax burden for which the state is attempting to compensate. (*Fulton, supra,* 516 U.S. at p. 334 [116 S.Ct. at p. 855].) Here, the state has not only failed to identify such a tax burden, it has explicitly disclaimed that the tax scheme at issue in this case was designed "to compensate for the burden on intrastate commerce imposed by a different tax."

Second, to invoke the "compensatory tax defense" the state must show that the tax on interstate commerce roughly approximates, but does not exceed, the amount of the tax on intrastate commerce. (*Fulton, supra,* 516 U.S. at pp. 334, 335 [116 S.Ct. at pp. 855, 855-856].) The Board produced no proof whatsoever on this subject at trial or on appeal.

Finally, the state must show that the "compensating taxes" fall on substantially equivalent events, meaning they must be sufficiently similar in substance to serve as mutually exclusive "proxies" for each other. (*Fulton, supra,* 516 U.S. at pp. 332, 338 [116 S.Ct. at pp. 854, 857].) The state does contend that the California insurance premium tax scheme is a "proxy" for the California franchise tax. But even if this were true, the insurance premium tax scheme cannot qualify as a "compensatory" tax since the state has utterly failed to establish the other elements of the "compensatory tax defense" to a facially discriminatory tax statute.

looking at the proportion of the issuing corporation's sales, payroll and property located in North Carolina. The net effect of the tax scheme was that a corporation doing all of its business within North Carolina would pay corporate income taxes on 100 percent of its income, meaning that a North Carolina resident who owned stock in that company would avoid the "intangibles" tax entirely. At the other extreme, a North Carolina resident who owned shares in a corporation that conducted *no* business within North Carolina would have to pay the .25 percent tax on the full (100 percent) market value of the stock. Similarly, the share values of corporations that conducted some (but not all) of their business within North Carolina would be subject to a sliding scale deduction. (*Id.* at p. 328 [116 S.Ct. at p. 852].)

The *Fulton* court determined that this tax scheme facially discriminated against interstate commerce. The court reasoned: "A regime that taxes stock only to the degree that its issuing corporation participates in interstate commerce favors domestic corporations over their foreign competitors in raising capital among North Carolina residents and tends, at least, to discourage domestic corporations from plying their trades in interstate commerce."[6] (*Fulton, supra*, 516 U.S. at p. 333 [116 S.Ct. at p. 855].) Similarly, a statutory scheme, such as the one before us, that disallows a deduction based on the amount of *property and employees* that the dividend-declaring insurer has in another state, favors domestic corporations over their foreign competitors in raising capital among California corporations, and tends, at least, to discourage domestic corporations from plying their trade in interstate commerce, from purchasing property or hiring employees in other states, and from purchasing subsidiary insurance corporations that do so. Thus, section 24410, subdivision (b) is unquestionably discriminatory on its face.

In sum, the tax and deduction scheme at issue fits within *Fulton*'s analytical framework. Just as in *Fulton*, here the state imposes a tax based on value derived from ownership of a corporation. Just as North Carolina reduced its intangibles tax in direct proportion to the amount of business the owned corporation did within the state's borders, so too California reduces the dividend tax to the extent such dividends are "paid from income from California sources," (§ 24410, subd. (b)), which is calculated based on the proportionate amount of property, payroll and gross receipts the owned corporation has within California. Fulton prohibits such discriminatory treatment.

---

[6]The Supreme Court also went on to hold that the North Carolina intangibles tax scheme was not a valid "compensatory" tax. However, since the Board has disclaimed a similar justification for the tax scheme in this case, we do not address that portion of *Fulton* in detail.

Our analysis leads us to the same conclusion the trial court reached: both subdivision (a) and subdivision (b) of section 24410 place an unjustifiable burden on interstate commerce and are therefore unconstitutional.[7]

### B. *Remedies*

#### 1. *Ceridian: Refund or Retroactive Assessment*

■ "If a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax's legality, the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation." (*McKesson Corp. v. Florida Alcohol & Tobacco Div.* (1990) 496 U.S. 18, 31 [110 S.Ct. 2238, 2247, 110 L.Ed.2d 17], fns. omitted (*McKesson*).) The *McKesson* court specified three ways in which a state may provide the requisite "clear and certain remedy" (*id.* at p. 40 [110 S.Ct. at p. 2252]) for its erroneous or unlawful tax collection. ■ Under these guidelines, the Board in this case may 1) refund to Ceridian the difference between the tax it paid and the tax it would have been assessed were it allowed the same deductions its competitors actually received, 2) assess and collect back taxes from Ceridian's competitors who benefited from the deductions during the contested tax period, or 3) fashion a combination of partial refund to Ceridian and partial retroactive assessment of tax increases on its favored competitors. (*Id.* at pp. 40-41 [110 S.Ct. at pp. 2252-2253].)

A retroactive assessment remedy is codified in section 19393, which provides, in relevant part, that for franchise tax purposes, if any deduction provided for by the Bank and Corporation Tax Law (§ 23001 et seq.) "is finally adjudged discriminatory against a national banking association contrary to Section 548 of Title 12 of the United States Code,[8] or is for any reason finally adjudged invalid, or discriminatory under the California Constitution, or the laws or the Constitution of the United States, the tax of the favored taxpayer shall be recomputed by the Franchise Tax Board for the taxable year in question, . . . by disallowing the deduction . . . ." The trial court was persuaded that section 19393 "has to do with banks, not insurance companies nor holding companies which hold insurance companies," and ordered a refund instead.

On appeal, the Board challenges the court's interpretation of the scope of section 19393, arguing it is not limited to banks. We need not resolve this

---

[7]Since it is not at issue here, we express no opinion as to the constitutionality of section 24402.

[8]"For the purposes of any tax law enacted under authority of the United States or any State, a national bank shall be treated as a bank organized and existing under the laws of the State or other jurisdiction within which its principal office is located." (12 U.S.C. § 548.)

issue. That is because the parties agree that retroactive tax collection in this case is impossible, since the tax years in question are 1978-1982, and the statute of limitations for assessment or collection of a tax deficiency is four years (§ 19057). Thus, even if section 19393 is broad enough to cover Ceridian, it cannot provide the constitutionally required relief in this case. The Board seems to recognize as much when it reminds us again that it cannot refuse to enforce the provision unless and until it has been adjudged unconstitutional (Cal. Const., art. III, § 3.5). We therefore hold that section 19393 violates a taxpayer's right to due process, where, as here, the retroactive assessment it provides cannot lawfully be collected. Accordingly, the trial court did not err by awarding Ceridian the stipulated refund.[9]

### 2. *Section 24410: Reform or Invalidation*

■ "[A] court may reform—i.e., 'rewrite'—a statute in order to preserve it against invalidation under the Constitution, when we can say with confidence that (i) it is possible to reform the statute in a manner that closely effectuates policy judgments clearly articulated by the enacting body, and (ii) the enacting body would have preferred the reformed construction to invalidation of the statute." (*Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 660-661 [47 Cal.Rptr.2d 108, 905 P.2d 1248] (*Kopp*).)

■ The Board suggests reformation of section 24410 might be appropriate if *only* subdivision (a), granting a dividend deduction solely to California corporations, were invalid. However, subdivision (a), which plainly applies only to corporations "commercially domiciled" in California, is clear and unambiguous on its face. Thus, we may not divine the legislative intent from other sources. (*Pacific Gas & Electric Co. v. Public Utilities Com.* (2000) 85 Cal.App.4th 86, 91-92, 95-96 [102 Cal.Rptr.2d 20].) It follows that section 24410, subdivision (a) is not subject to reformation. (85 Cal.App.4th. at pp. 91-92, 95-96.) Moreover, even if we could reform subdivision (a) it would not save the statutory scheme. The deductions thus more broadly allowed would still be calculated in accordance with a formula that we have determined violates the commerce clause. As the Board recognizes, attempting to rewrite subdivision (b) would involve us in precisely the type of judicial policymaking and encroachment on the legislative function in violation of the separation of powers doctrine, against which the *Kopp* court warned. (*Kopp, supra,* 11 Cal.4th at p. 661.) Thus, reformation is not possible in this case.

---

[9]The Board maintains that even if Ceridian cannot be denied a refund, section 19393 should be applied to taxpayers that benefited from the deduction and as to whom readjustment of tax liability is not time-barred. On the other hand, not surprisingly, amici repeatedly refer to refunds due to "Ceridian and *similarly situated* taxpayers." This is not a class action suit; only Ceridian's refund claim is before us. Accordingly, we express no general opinion regarding the appropriate remedy in other cases, nor do we address the breadth of section 19393.

### III. CONCLUSION AND DISPOSITION

We hold that Revenue and Taxation Code section 24410 is an unconstitutional enactment in that it violates the commerce clause both by allowing a deduction for insurance subsidiary dividends only to corporations domiciled in California, and in limiting the amount of the deduction according to a formula based on the subsidiary's gross receipts, payroll and property within the state. The trial court's judgment invalidating the statute and awarding Ceridian the stipulated amount of tax refund is affirmed.

McGuiness, P. J., and Walker, J., concurred.

A petition for a rehearing was denied January 18, 2001, and the opinion was modified to read as printed above.