Merrimack
No. 2005-668

## GENERAL ELECTRIC COMPANY, INC.

v.

## COMMISSIONER, NEW HAMPSHIRE DEPARTMENT OF REVENUE ADMINISTRATION

Argued: July 21, 2006
Opinion Issued: December 5, 2006

458

*Rath, Young and Pignatelli, P.A.*, of Concord (*William F. J. Ardinger* and *Andrew W. Serell* on the brief, and *Mr. Ardinger* orally), and *Walter Hellerstein*, of Athens, Georgia, on the brief, for the plaintiff.

*Kelly A. Ayotte*, attorney general (*Karen A. Schlitzer*, assistant attorney general, on the brief and orally), and *Kathleen J. Sher*, of Concord, on the brief, for the defendant.

HICKS, J. The plaintiff, General Electric Company, Inc. (GE), appeals the decision of the Superior Court (*Fitzgerald*, J.) granting motions filed by the defendant, New Hampshire Department of Revenue Administration (department), to dismiss for lack of standing and for summary judgment. We reverse the grant of the motion to dismiss and affirm the grant of the motion for summary judgment.

The record supports the following facts. This case involves business profits taxes paid by GE from 1990 through 1999 (the tax years). GE is a New York corporation with its principal offices in Connecticut, and with a place of business in Somersworth, New Hampshire. GE is the parent corporation of numerous affiliated corporations both domestic and foreign. None of GE's foreign affiliates was domiciled in or transacted business within New Hampshire during the tax years.

During the tax years, GE transacted business within New Hampshire as a "business organization" and was subject to the business profits tax (BPT). RSA 77-A:1, I (2003) (amended 2004), :2 (2003), :6, I (2003). GE paid the BPT during the tax years, but maintains that its tax liability was miscalculated resulting in overpayment. Specifically, GE challenges the constitutionality of RSA 77-A:4, IV (2003), which permits a parent corporation to take a deduction for dividends received from its corporate

subsidiaries when the gross business profits of the subsidiaries have already been subject to tax in New Hampshire. The department denied GE's requests to use this deduction for dividends it received from its foreign subsidiaries, since they did not transact business in the state and therefore their gross business profits were not subject to tax in New Hampshire.

GE and the department executed two settlement agreements agreeing, among other things, that GE would receive a refund of approximately $3.15 million should the foreign dividend deduction issue be resolved in GE's favor. GE subsequently filed with the department requests for refunds and petitions for redetermination and reconsideration regarding its BPT returns. Because the department's hearings officer lacked the authority to determine the constitutionality of RSA 77-A:4, IV, GE petitioned the superior court for review pursuant to RSA 21-J:28-b, IV (2000) (amended 2003). GE moved for summary judgment and the department moved to dismiss and for summary judgment. The trial court granted the department's motion to dismiss on the ground that GE lacked standing to challenge RSA 77-A:4, IV. The trial court alternatively granted the department's motion for summary judgment finding that, even if GE had standing to challenge the statute, the deduction in RSA 77-A:4, IV does not discriminate against foreign commerce in violation of the Commerce Clause of the Federal Constitution.

We begin with a review of New Hampshire's BPT regime. Calculation of a business's tax liability requires an initial determination of whether the business is "unitary" within the meaning of RSA 77-A:1, XIV (2003). A "unitary business" is "one or more related business organizations engaged in business activity both within and without this state among which there exists a unity of ownership, operation, and use; or an interdependence in their functions." RSA 77-A:1, XIV. Neither party disputes that GE and its subsidiaries operate as a unitary business.

The tax liability of a unitary business is calculated using a combined reporting method that apportions the income of the unitary business to the state. RSA 77-A:1, XIII, XV, XVI (2003). The income from all domestic members of the unitary business, which are collectively referred to as the "water's edge combined group," RSA 77-A:1, XV, is aggregated in the combined report. RSA 77-A:1, XVI. The income of foreign members of the unitary business is excluded from the combined report if the foreign members qualify as an "overseas business organization[]." RSA 77-A:1, XV. "Overseas business organizations" (OBOs) are those business organizations "with 80 percent or more of the average of their payroll and property assignable to a location outside the 50 states and the District of Columbia." RSA 77-A:1, XIX (2003). Although an OBO is not considered

part of the water's edge combined group, it may still qualify as a unitary member. RSA 77-A:1, XIV, XV.

Once the net income from all members of the water's edge group is combined, any domestic "intergroup activity" such as the payment of dividends or royalties is excluded in determining the "gross business profits" of the group. N.H. ADMIN. RULES, Rev 302.10(b); *see* RSA 77-A:3, I (2003). The "gross business profits" are then apportioned to the state using three factors: property, payroll and sales. RSA 77-A:3, I. The resulting amount constitutes the "New Hampshire water's edge taxable business profits" of the group. *See* RSA 77-A:1, IV, XV, XVI; N.H. ADMIN. RULES, Rev 301.02. In this calculation, the dividends of an OBO that are paid to a member of the water's edge combined group are initially excluded from the group's gross business profits and are apportioned separately to determine the "New Hampshire foreign dividends taxable business profits." RSA 77-A:3, II(b) (2003); N.H. ADMIN. RULES, Rev 311.24(a), (f). The "New Hampshire foreign dividends taxable business profits" are then added to the "New Hampshire water's edge taxable business profits" to produce "New Hampshire taxable business profits." RSA 77-A:3, II(b)(6). The applicable tax rate is then applied, resulting in the tax due. RSA 77-A:2 (2003). In this manner, dividends paid by a foreign member of the unitary group to domestic members are apportioned to New Hampshire and taxed.

Pursuant to the parties' settlement agreement, GE and its domestic unitary affiliates are to be treated as one water's edge combined group within the meaning of RSA 77-A:1, XV. As such, the income of GE's foreign subsidiaries was excluded from the calculation of GE's tax liability for the tax years because each was an OBO within the meaning of RSA 77-A:1, XIX. However, pursuant to RSA 77-A:3, II(b), the dividends paid to GE by its foreign subsidiaries remained subject to an apportioned tax. It is the inclusion of these foreign dividends in calculating GE's taxable business profits that GE contests in this appeal.

RSA 77-A:4, IV provides for the following deduction from gross business profits:

> In the case of a corporation which is the parent of an affiliated group pursuant to the provisions of chapter 6 of the United States Internal Revenue Code as defined in RSA 77-A:1, XX, a deduction of such amounts of gross business profits as are derived from dividends paid to the parent by a subsidiary or subsidiaries whose gross business profits have already been subject to taxation under this chapter during the same taxable period. The purpose of this deduction is to prevent double

taxation on the identical gross business profits of a controlled corporation or group of corporations and its parents.

RSA 77-A:4, IV has traditionally been used by corporations with affiliates or subsidiaries that file separately, and not under the combined reporting method. In such instances, RSA 77-A:4, IV allows a deduction for dividends paid to taxable parent corporations by subsidiaries that conducted business in the state and were therefore subject to a separate BPT. The dividends received from foreign subsidiaries that do not conduct business in the state and, accordingly, pay no BPT, do not qualify for the deduction allowed by the statute. RSA 77-A:4, IV.

On appeal, GE argues that the trial court improperly granted the department's motion for summary judgment and that by limiting the dividends-received deduction to those parents whose subsidiaries conduct business in the state, the statute facially discriminates against foreign commerce in violation of the Commerce Clause of the United States Constitution. GE also appeals the trial court's grant of the department's motion to dismiss based upon a lack of standing.

*I. Motion to Dismiss*

■ In considering a motion to dismiss, our standard of review is whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery. We assume the plaintiff's pleadings to be true and construe all reasonable inferences drawn therefrom most favorably to it. We need not assume the truth of statements in the plaintiff's complaint, however, which are merely conclusions of law.

*In re Juvenile 2004-789*, 153 N.H. 332, 334 (2006) (quotation and brackets omitted). Since the trial court applied RSA 77-A:4, IV to an undisputed set of facts, this appeal presents a question of law that we review *de novo. Id.*

For a court to hear a party's complaint, the party must have standing to assert the claim. *Appeal of Richards*, 134 N.H. 148, 154, *cert. denied*, 502 U.S. 899 (1991). The general rule in New Hampshire is that a party has standing to raise a constitutional issue only when the party's own rights have been or will be directly affected. *Hughes v. N.H. Div. of Aeronautics*, 152 N.H. 30, 35 (2005).

The trial court found that GE failed to show that "RSA 77-A:4, IV directly and specifically affect[ed] its rights." Adopting the department's statutory application argument, the court found that the statute did not apply generally to parents with foreign subsidiaries. The court also found that RSA 77-A:4, IV did not apply specifically to GE since "the purpose of

the statute is to prevent double taxation" and GE's foreign subsidiaries were never subject to taxation in New Hampshire.

To qualify for the dividend-received deduction, RSA 77-A:4, IV requires that the dividend recipient must qualify as a "parent of an affiliated group" as defined by the United States Internal Revenue Code (IRC). RSA 77-A:4, IV. Section 1504(a) of the IRC defines "affiliated group," in part, as: "1 or more chains of includable corporations connected through stock ownership with a common parent." 26 U.S.C. § 1504(a)(1)(A) (2000). This term is further defined in the statute to require minimum stock ownership of eighty percent between the parent and its affiliates and to limit the type of corporations that are considered "includable." Id. § 1504(a)(2)(B) (2000). Foreign corporations are specifically excluded from the definition of "includable corporation." Id. § 1504(b)(3) (2000). The trial court relied in part upon this exclusion to find that GE does not have standing to challenge the constitutionality of RSA 77-A:4, IV because GE's challenge relates only to its foreign subsidiaries. We disagree.

The plain language of RSA 77-A:4, IV shows that the phrase "parent of an affiliated group" refers to the parent company's status, and not that of the subsidiaries. In other words, as long as the stock requirements are met with regard to an includable subsidiary, it satisfies the first condition of the statute in order to receive the dividend-received deduction, which GE does. By its terms, the deduction is not necessarily limited to parents with dividend-paying subsidiaries that are also members of the affiliated group. Therefore, we hold that GE qualifies as a "parent of an affiliated group" under RSA 77-A:4, IV. However, we express no opinion as to whether the statute would apply to a parent having *only* foreign subsidiaries, as that is not the case presently before us.

The department also argues, and the trial court agreed, that GE lacks standing to challenge RSA 77-A:4, IV because "GE is a unitary business and RSA 77-A:4, IV does not apply and/or affect the way in which GE was taxed in New Hampshire during the applicable tax years." As a unitary business, GE is required to file under the combined reporting method discussed above. RSA 77-A:1, XIII-XVI, :3, I-III (2003). Under the combined reporting method, it makes no difference whether a corporation's subsidiaries do business in-state or out-of-state because the income from every member of the unitary group is combined and apportioned. However, because New Hampshire uses the water's edge method of apportionment, the combined income is limited to that derived from domestic members of the unitary group. RSA 77-A:1, XV.

Any income from a foreign member of GE's unitary group was excluded from GE's combined report and was not taxed. Further, because none of GE's foreign subsidiaries did any business in New Hampshire, they did not

file separate tax returns with the state. The department argues on appeal that since the purpose of RSA 77-A:4, IV is "to prevent double taxation," the statute is not applicable to GE's tax status because its foreign subsidiaries did not file separate returns in New Hampshire, were never subject to income taxation, were not taxed twice, and therefore were not entitled to receive the dividend-received deduction.

Even if we were to accept the department's argument—that RSA 77-A:4, IV does not apply to GE's foreign dividends because of GE's unitary status and usage of the water's edge combined reporting method— standing is conferred upon GE to challenge the statute for the very reason that it was denied the statute's benefit. The fact that none of GE's subsidiaries conducted business within the state and thus filed no separate BPT returns or that GE operates as a unitary business does not preclude GE from challenging RSA 77-A:4, IV. Any corporate parent that pays BPT in New Hampshire but is ineligible for the dividend-received deduction in RSA 77-A:4, IV is a proper party to bring suit for a determination of whether the basis upon which it is ineligible is constitutionally permissible. Such an adjudication directly and specifically affects GE's rights as a parent corporation paying BPT in the state. *See Hughes*, 152 N.H. at 35; *Appeal of Richards*, 134 N.H. at 154. We hold that GE has sufficient interest in the outcome of this litigation to bring a constitutional challenge to RSA 77-A:4, IV. Accordingly, we reverse the order granting the department's motion to dismiss.

*II. Summary Judgment*

Next, we consider whether the trial court properly granted summary judgment to the department. A motion for summary judgment may be granted only where no genuine issue of material fact is present and the moving party is entitled to judgment as a matter of law. *Soper v. Purdy*, 144 N.H. 268, 270 (1999). In determining whether summary judgment should be granted, we consider the affidavits and other evidence submitted below, and any reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Id.*

The trial court based its ruling upon a determination that "RSA 77-A:4, IV does not discriminate against foreign commerce and therefore, does not violate the United States Commerce Clause." The facts are not disputed by the parties and the question of whether RSA 77-A:4, IV violates the Commerce Clause of the Federal Constitution is a question of law that we review *de novo. Caterpillar Inc. v. N.H. Dep't of Revenue Admin.*, 144 N.H. 253, 255 (1999), *cert. denied*, 529 U.S. 1021 (2000).

Before we address the underlying issue of facial discrimination, we must first address GE's statutory construction argument regarding RSA chapter 77-A (2003).

*A. Statutory Construction*

GE argues that since foreign subsidiaries are not included as part of the water's edge combined group, they must file a separate BPT return if they conduct business in the state, thereby allowing use of the dividend-received deduction. *See* RSA 77-A:1, I (defining business organization); RSA 77-A:2 (imposing BPT on every business organization); RSA 77-A:6, I (requiring a BPT return). The department largely ignores this argument, focusing nearly its entire brief upon a comparison of domestic subsidiaries and foreign subsidiaries. However, the issue on appeal, which is consistent with GE's argument below, focuses specifically upon whether RSA 77-A:4, IV facially discriminates against parents of dividend-paying foreign subsidiaries which do not conduct business in the state.

The department addresses this scenario summarily, asserting that any dividends from a foreign unitary group member paid to a member of the domestic unitary group that have been subject to taxation will already be excluded from the taxable business profits in order to prevent double taxation in violation of the Federal Constitution. To support this assertion, the department cites only to RSA 77-A:4, X (2003), which merely provides for the addition of expenses to gross business profits where a corporation has excluded gross business profits related to those expenses "pursuant to federal constitutional law." The department concludes from this that "RSA 77-A:4, IV never enters the analysis in a combined reporting regime." GE counters that the taxing regime does not operate in this manner and that foreign subsidiaries conducting business in the state would be required to file a separate BPT return, and any dividends paid to the parent would be deducted pursuant to RSA 77-A:4, IV.

We note that GE does not have any foreign subsidiaries that conduct business in the state. It is uncertain, therefore, exactly how the state taxing regime, including RSA 77-A:4, IV, would operate if it did. Essentially, GE asks us to evaluate a hypothetical situation. Typically, we will not invalidate a statute based upon a hypothetical factual scenario that is not before us. *New England Dragway v. M-O-H Enters.*, 149 N.H. 188, 192 (2003). However, in the context of New Hampshire's tax system, a facial attack on RSA 77-A:4, IV does raise broad constitutional concerns and is likely to come before us again. In order to reach the merits of this claim, we accept GE's hypothetical and assume without deciding that the parent of a foreign subsidiary doing business in the state might, under

certain circumstances, be entitled to the dividend-received deduction in RSA 77-A:4, IV.

The department also argues that the dividend-received deduction is of limited scope, allowing a deduction only up to the amount of gross business profits already taxed. In contrast, GE argues that RSA 77-A:4, IV allows a "full deduction for a dividend received from a foreign subsidiary doing business in New Hampshire."

This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Appeal of Ann Miles Builder*, 150 N.H. 315, 318 (2003). When the issue raised presents a new question of statutory construction, we begin our analysis with an examination of the statutory language. *Id.* We are also mindful of the well-established principle of statutory construction that all words used should be given their ordinary meaning unless a different meaning is indicated from the context in which they are used. *Dupont v. Chagnon*, 119 N.H. 792, 794 (1979).

The statutory construction urged by GE, which would allow a "hyper-deduction" regardless of the amount of the tax paid in New Hampshire, might well run afoul of the Commerce Clause. However, we agree with the department that the statute, by its terms, only allows a limited dividend deduction for the amount of business profits already taxed by the state. RSA 77-A:4, IV; *cf. First Financial Group of N.H., Inc. v. State*, 121 N.H. 381, 385 (1981); *Concord Inv. Corp. v. N.H. Tax Comm'n*, 114 N.H. 105, 109 (1974). The purpose of the dividend-received deduction is "to prevent double taxation on the *identical* gross business profits" of a subsidiary and its parent. RSA 77-A:4, IV (emphasis added). Allowing a full deduction for dividends paid to a parent when the subsidiary conducted only a small amount of business in the state and thus was only taxed on a small amount of its profits yields an absurd result. Although the amount of business conducted in the state by the subsidiary may allow the parent to deduct the full amount of the dividend received in some situations, this will not always be the case. We therefore continue our analysis with the understanding that when RSA 77-A:4, IV does allow for a dividend-received deduction, the deduction is limited by the amount of income already taxed in New Hampshire.

*B. Commerce Clause*

This brings us to the central issue in this case: Whether RSA 77-A:4, IV facially discriminates against foreign commerce by permitting a deduction for dividends received from foreign corporations doing business in New Hampshire, while denying a deduction for dividends received from foreign corporations not doing business in New Hampshire.

■ The Commerce Clause of the United States Constitution reserves to Congress the right to "regulate commerce with foreign nations, and among the several states." U.S. CONST. art. I, § 8, cl. 3. This clause also imputes a "negative aspect" which prohibits states from unjustifiably discriminating against or burdening interstate and foreign commerce. *Caterpillar Inc.*, 144 N.H. at 257 (quotation omitted). In *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977), the United States Supreme Court outlined the test for determining whether a state taxing regime survives a challenge under the Commerce Clause. To be valid, the tax must: (1) have a "substantial nexus with the taxing State"; (2) be "fairly apportioned"; (3) "not discriminate against interstate commerce"; and (4) be "fairly related to the services provided by the State." *Id.* at 279.

The Supreme Court has defined Commerce Clause "discrimination" in numerous ways over the years. In 1977, the Court found discrimination where a tax "provid[ed] a direct commercial advantage to local business." *Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318, 329 (1977) (quotation omitted). In 1994, the Court defined it as "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Oreg.*, 511 U.S. 93, 99 (1994). In 1996, the Court upheld the principle that a state taxing regime is discriminatory if it "taxes a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State." *Fulton Corp. v. Faulkner*, 516 U.S. 325, 331 (1996) (quotation and brackets omitted). "State laws discriminating against interstate commerce on their face are virtually *per se* invalid." *Id.* (quotation omitted).

■ The party challenging the constitutionality of a state tax bears the burden of proving discrimination. *Caterpillar Inc.*, 144 N.H. at 258. In order to prove that a state tax statute violates the Commerce Clause, the taxpayer need not show the extent of disparate tax treatment or demonstrate a minimal level of discriminatory effect; the taxpayer need only prove discrimination against commerce. *Id.* However, statutes are presumed constitutional, and they will only be declared invalid "upon inescapable grounds." *Baines v. N.H. Senate President*, 152 N.H. 124, 133 (2005) (quotation omitted).

GE argues that "RSA 77-A:4, IV discriminates in violation of the commerce clause because it affords a deduction for dividends received from corporations that do business in New Hampshire, while it denies a deduction for dividends received from corporations that do not do business in New Hampshire." The department responds that it is constitutional for states to proportionately tax foreign source income and that GE fails to

show that "foreign commerce is taxed more heavily than intrastate commerce."

As an initial matter, we note that the state's right to tax foreign dividends is not contested. In *Mobil Oil Corporation v. Commissioner of Taxes*, 445 U.S. 425 (1980), the Supreme Court upheld the states' right to tax foreign-source dividend income when the dividend is received by a corporation doing business in the state. In *Caterpillar Inc.*, we upheld the inclusion of royalty and interest payments made by a foreign subsidiary in the net income calculation of a New Hampshire business filing a combined report. *Caterpillar Inc.*, 144 N.H. at 258-59. There, we noted that these payments "were expenses to the foreign members, deducted on each payor's foreign income tax return . . . [and as such] . . . constituted income to the domestic recipients." *Id.* at 259.

We begin our Commerce Clause analysis with the Supreme Court's decision in *Kraft General Foods, Inc. v. Iowa Department of Revenue and Finance*, 505 U.S. 71 (1992). Although the tax system in *Kraft* differs from the one before us, the principles enumerated in that decision are helpful to the resolution here. In *Kraft*, the income of domestic subsidiaries that did not conduct business in Iowa was not taxed, and the in-state parent was permitted to deduct dividends received from them. In contrast, the in-state parent was not permitted to deduct dividends received from its foreign subsidiaries doing business abroad. *Id.* at 74. Noting that "Iowa is not a State that taxes an apportioned share of the entire income of a unitary business," *id.* at 74 n.9, the Court held that the tax system was discriminatory, because, among other things, Iowa taxed neither the income of, nor dividends paid by, domestic members of the unitary group that did not conduct business in the state. *Id.* at 80.

In its analysis, the Court added a footnote that has been the focus of many state court decisions over the past fourteen years. It provides:

> If one were to compare the aggregate tax imposed by Iowa on a unitary business which included a subsidiary doing business throughout the United States (including Iowa) with the aggregate tax imposed by Iowa on a unitary business which included a foreign subsidiary doing business abroad, it would be difficult to say that Iowa discriminates against the business with the foreign subsidiary. Iowa would tax an apportioned share of the domestic subsidiary's entire earnings, but would tax only the amount of the foreign subsidiary's earnings paid as a dividend to the parent.
>
> In considering claims of discriminatory taxation under the Commerce Clause, however, it is necessary to compare the

> taxpayers who are "most similarly situated." A corporation with a subsidiary doing business in Iowa is not situated similarly to a corporation with a subsidiary doing business abroad. In the former case, the Iowa operations of the subsidiary provide an independent basis for taxation not present in the case of the foreign subsidiary. A more appropriate comparison is between corporations whose subsidiaries do not do business in Iowa.

*Id.* at 80 n.23 (citation omitted). Thus the Court distinguishes between a single entity filing system where income from out-of-state domestic subsidiaries is not taxed at all and a combined reporting method system where out-of-state domestic income is taxed through apportionment. This distinction has been relied upon by some state courts to uphold ostensibly discriminatory taxation provided a combined reporting method is properly used. *See, e.g., Appeal of Morton Thiokol, Inc.,* 864 P.2d 1175 (Kan. 1993); *Du Pont de Nemours v. State Tax Assessor,* 675 A.2d 82 (Me. 1996).

Distinguishing its taxing system from that in *Kraft*, the Kansas Supreme Court upheld the state's combined reporting tax formula which permitted in-state corporations to deduct dividends received from domestic subsidiaries, but included dividends received from foreign subsidiaries in the calculation of taxable income. *Thiokol,* 864 P.2d at 1185. The court essentially held that this formula effectively "balanc[ed] the [tax] burdens" of each entity and accepted the state's argument that

> the aggregate tax imposed by [the state] on a unitary business with a domestic subsidiary would not be less burdensome than that imposed by [the state] on a unitary business with a foreign subsidiary because the income of the domestic subsidiary would be ... taxed while only the dividend of the foreign subsidiary would be taxed.

*Id.* at 1186.

Similarly, in *Du Pont*, the Maine Supreme Judicial Court followed the reasoning of *Thiokol* and upheld an analogous taxing formula. *Du Pont,* 675 A.2d at 83. The court found that by proportionately taxing the income received from domestic subsidiaries and the dividends received from foreign subsidiaries, the state's taxing system "provid[ed] a type of 'taxing symmetry.'" *Id.* at 88. The court further held that "the inclusion of dividends paid by foreign subsidiaries does not constitute ... facial discrimination against foreign commerce." *Id.*

The *Thiokol* and *Du Pont* courts looked at the overall tax burden placed upon the unitary business to determine whether the general taxing formula discriminated against foreign commerce. *Thiokol,* 864 P.2d at

1186; *Du Pont*, 675 A.2d at 88. Several other courts have upheld the principles outlined in *Thiokol* and *Du Pont*, although some have invalidated taxing regimes as discriminatory for other reasons not applicable here. *See Hutchinson Technology v. Com'r of Revenue*, 698 N.W.2d 1, 17 (Minn. 2005) ("But in contrast to the circumstances in *Morton Thiokol* and *Du Pont*, which involved taxes imposed by the same state for which the dividend-received deduction was intended to compensate, the additional tax liability for which the dividend-received deduction would compensate here is *federal* tax liability"); *Emerson Elec. Co. v. Tracy*, 735 N.E.2d 445, 448-49 (Ohio 2000) (recognizing the validity of the "taxing symmetry" principle where domestic and foreign subsidiaries are both taxed once); *Conoco, Inc. v. Taxation & Revenue Dept.*, 931 P.2d 730, 735 (N.M. 1996) (same), *cert. denied*, 521 U.S. 1112 (1997); *Bernard Egan & Co. v. State, Dept. of Rev.*, 769 So. 2d 1060, 1061 (Fla. Dist. Ct. App. 2000) (upholding similar taxing regime as constitutional because domestic and foreign subsidiary income was equally treated under the consolidated reporting method), *cert. denied*, 534 U.S. 995 (2001); *Caterpillar, Inc. v. C.I.R.*, 568 N.W.2d 695, 701 (Minn. 1997) (adopting similar analysis as applied to foreign interest and royalty payments), *cert. denied*, 522 U.S. 1112 (1998); *Fujitsu IT Holdings v. Franchise Tax Bd.*, 15 Cal. Rptr. 3d 473, 489-90 (Ct. App. 2004) (adopting the "taxing symmetry" principle in *Du Pont*, and upholding a taxing regime which taxed foreign dividend income but excluded dividend income from domestic subsidiaries).

While we recognize that GE does not challenge the state's combined reporting method but rather focuses only upon the alleged disparate treatment between foreign subsidiaries doing business in the state and those that do not, we find the principles of "aggregate tax" burdens and "taxing symmetry" enumerated in these cases helpful to the analysis here. The United States Supreme Court requires analysis of the aggregate tax burden when reviewing a claim that a tax discriminates in violation of the Commerce Clause: "a proper analysis must take the whole scheme of taxation into account." *Halliburton Oil Well Co. v. Reily*, 373 U.S. 64, 69 (1963) (quotation and citation omitted); *Kraft*, 505 U.S. at 80-81 & n.23 (speaking in terms of the "aggregate tax imposed by [a state] on a unitary business").

Following the reasoning in these cases, we assess New Hampshire's taxing regime as a whole and look at the aggregate tax imposed upon a unitary business. "A state tax must be assessed in light of its actual effect considered in conjunction with other provisions of the State's tax scheme." *Maryland v. Louisiana*, 451 U.S. 725, 756 (1981). Viewing RSA 77-A:4, IV not in isolation, but as a part of a larger taxing system, we find no

improper discriminatory treatment. For purposes of this appeal, we assume that a foreign subsidiary conducting business in New Hampshire is subject to the BPT under RSA chapter 77-A and must pay a tax apportioned upon its profits attributable to the state. RSA 77-A:1, IV; RSA 77-A:3, I. Any dividends paid to a parent corporation also located within the state may be deducted pursuant to RSA 77-A:4, IV up to the amount of business profits already taxed. RSA 77-A:4, IV; *First Financial*, 121 N.H. at 385. This ensures that the income of the business entity is taxed only once. *Id.* In contrast, a foreign subsidiary that does not conduct business in the state is not subject to the BPT and its income is therefore not directly taxed. RSA 77-A:1, I. Therefore, any dividends paid to an in-state parent corporation are apportioned and taxed as income; they are not subject to a deduction under RSA 77-A:4, IV because that dividend income has been taxed only once.

Accordingly, the New Hampshire BPT regime contains the type of "taxing symmetry" upheld in *Du Pont* and the "balancing the burdens" formula affirmed in *Thiokol*. Although the in-state parent is not taxed directly in the first example given above, because by nature of the unitary business concept the parent and its subsidiary are considered a single business entity, it follows that the parent ultimately pays the BPT of its subsidiary. *See Concord Inv. Corp.*, 114 N.H. at 109; *Caterpillar Inc.*, 144 N.H. at 259.

■ Furthermore, by viewing the state's taxing regime as a whole, we conclude that RSA 77-A:4, IV does not facially discriminate by any means offensive to the Commerce Clause. Since both the unitary business with the foreign subsidiary operating in New Hampshire and the unitary business with the foreign subsidiary not operating in New Hampshire are each only taxed once, there is no "differential treatment" that benefits the former and burdens the latter, *Oregon Waste*, 511 U.S. at 99; the latter is not taxed more heavily than the former, *Fulton*, 516 U.S. at 331; and the former is not given a "direct commercial advantage" over the latter, *Boston Stock Exchange*, 429 U.S. at 329 (quotation omitted). Although the total tax assessed in the end may not be exactly equal, we have noted before that the state's taxation methods need "not apportion income perfectly[;] the Federal Constitution does not require mathematical exactitude, only a rough approximation." *Caterpillar Inc.*, 144 N.H. at 262 (quotations omitted).

In spite of these decisions, GE argues that "[e]very court that has examined dividends received deduction statutes substantially the same as RSA 77-A:4, IV has struck down the provisions as violating the Commerce Clause." GE cites several decisions to support this claim.

In *Dart Industries, Inc. v. Clark,* 657 A.2d 1062 (R.I. 1995), the Supreme Court of Rhode Island invalidated a statutory provision which effectively excluded domestic dividends but required inclusion of foreign dividends in the calculation of a corporation's Rhode Island net income. *Id.* at 1063-64. The court held that the statute contained the same "fatal flaw" as the statute in *Kraft,* and found that "Rhode Island's [taxing regime] treats dividends paid by a foreign corporation less favorably than those paid by domestic corporations." *Id.* at 1066. Similarly, in *D.D.I., Inc. v. State ex rel. Clayburgh,* 657 N.W.2d 228, 231 (N.D. 2003), the court noted that the tax commissioner conceded that the state's dividends received deduction was discriminatory and focused instead upon the commissioner's argument that it was constitutional as a compensatory tax. Therefore, no further analysis was conducted regarding facial discrimination.

In two cases from California, two separate courts of appeal invalidated statutes that permitted a deduction only for dividends paid out of income that had already been subject to tax in the state. *Farmer Bros. Co. v. Franchise Tax Bd.,* 134 Cal. Rptr. 2d 390 (Ct. App. 2003), *cert. denied,* 540 U.S. 1178 (2004); *Ceridian Corp. v. Franchise Tax Bd.,* 102 Cal. Rptr. 2d 611 (Ct. App. 2000). *But see Fujitsu IT Holdings,* 15 Cal. Rptr. 3d at 489-90. In *Ceridian,* the Franchise Tax Board for the State of California (FTB) argued that the provision was not unconstitutional because it "avoids double taxation." *Ceridian,* 102 Cal. Rptr. 2d at 619. The court rejected this argument as inconsequential, since the statute facially discriminated against out-of-state corporations by "favor[ing] domestic corporations over their foreign competitors in raising capital among California corporations." *Id.* at 620. Similarly, in *Farmer Brothers,* the court held that the dividend-received deduction was discriminatory on its face because it "favors dividend-paying corporations doing business in California and paying California taxes over dividend-paying corporations which do not do business in California and pay no taxes in California." *Farmer Bros.,* 134 Cal. Rptr. 2d at 398. The court relied, in part, upon *Fulton.*

In *Fulton,* the Supreme Court held that North Carolina's "intangibles tax" assessed against corporate stock owned by state residents "facially discriminates against interstate commerce." *Fulton,* 516 U.S. at 333. The tax was calculated using a formula that allowed taxpayers who owned stock in in-state corporations, which were subject to tax in North Carolina, to take a limited "percentage deduction equal to the fraction of the issuing corporation's income subject to tax in North Carolina." *Id.* at 328.

We do not agree that these cases require a finding that RSA 77-A:4, IV is discriminatory. *Fulton* is not analogous to the present case because there, the state taxing regime taxed stock ownership and treated in-state stock more favorably than stock held in out-of-state corporations. *Id.* at

333. In the present case, the state is instead taxing a proportionate share of dividend *income* coming into the state. *See generally Container Corp. v. Franchise Tax Bd.*, 463 U.S. 159, 187-88 (1983) (distinguishing taxing regime which taxed property from regime which taxed income); *Mobil Oil Corp.*, 445 U.S. at 446.

In addition, we do not find the decisions of the California appellate courts and in *Dart* and *D.D.I.* to be persuasive here. While the deduction provisions invalidated in these cases appear similar to the New Hampshire dividend-received deduction at issue, it may be that in those cases, there was no taxing symmetry as there is here. Regardless, we do not agree with their analysis. We also note that a more recent California Court of Appeals decision, which cited *Du Pont*, upheld a limited deduction for dividends received from foreign corporations while allowing a full deduction for dividends received from domestic corporations. *Fujitsu IT Holdings*, 15 Cal. Rptr. 3d at 489.

As stated above, we examine our state taxing regime as a whole, and look at the aggregate tax assessed against the unitary business in New Hampshire. We conclude that RSA 77-A:4, IV does not facially discriminate against a dividend-paying foreign subsidiary that does not conduct business in New Hampshire.

There being no genuine issue of material fact in dispute and the department being entitled to summary judgment as a matter of law, we affirm the trial court's grant of the department's motion for summary judgment. Because we hold that RSA 77-A:4, IV is not unconstitutional on its face, we need not address the compensatory tax issue.

*Affirmed in part and reversed in part.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.