# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-00600-SCT

*MISSISSIPPI DEPARTMENT OF REVENUE f/k/a*
*MISSISSIPPI STATE TAX COMMISSION*

*v.*

*AT&T CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/19/2015 |
| TRIAL JUDGE: | HON. WILLIAM H. SINGLETARY |
| TRIAL COURT ATTORNEYS: | LAURA HUDDLESTON CARTER |
| | BRIDGETTE TRENETTE THOMAS |
| | GARY WOOD STRINGER |
| | JOHN FLOYD FLETCHER |
| COURT FROM WHICH APPEALED: | CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY |
| ATTORNEYS FOR APPELLANT: | LAURA HUDDLESTON CARTER |
| | BRIDGETTE TRENETTE THOMAS |
| ATTORNEYS FOR APPELLEE: | JOHN FLOYD FLETCHER |
| | ADAM STONE |
| | KAYTIE MICHELLE PICKETT |
| NATURE OF THE CASE: | CIVIL - UNCONSTITUTIONAL STATUTE |
| DISPOSITION: | AFFIRMED - 10/27/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., KITCHENS AND KING, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     Mississippi Code Section 27-7-15(4)(i) exempts from taxation "[i]ncome from dividends that has already borne a tax as dividend income under the provisions of this article, when such dividends may be specifically identified in the possession of the recipient." Miss. Code Ann. § 27-7-15(4)(i) (Rev. 2013). In 2003, the then-Mississippi State Tax Commission

assessed additional income tax, penalties, and interest in an amount greater than $11.75 million against AT&T based on its income from dividends from non-Mississippi subsidiaries. After availing itself of the administrative appeal process, AT&T appealed to the Chancery Court of the First Judicial District of Hinds County, arguing that a portion of Section 27-7-15(4)(i) discriminated against interstate commerce in violation of the negative, or dormant, aspect of the Commerce Clause of the United States Constitution. AT&T argued that the scheme allowed an income tax exemption for dividends received from AT&T's Mississippi subsidiaries while denying an exemption to similarly situated non-Mississippi subsidiaries. Ultimately, the chancellor agreed and declared unconstitutional the offensive portion of Section 27-7-15(4)(i). For the reasons articulated below, we affirm.[1]

## FACTS AND PROCEDURAL HISTORY

¶2.     The parties stipulated to the facts of this case. On June 11, 2003, the then-Mississippi State Tax Commission (Tax Commission), now the Mississippi Department of Revenue (the Department), assessed against AT&T Corporation (AT&T) $11,755,044 in additional income tax, penalties, and interest based on adjustments to AT&T's original income tax returns for the tax years December 1997 through December 1999. AT&T appealed the assessment to the

---

[1] Failure to serve a copy of the appellate brief on the Attorney General of the State of Mississippi results in application of a procedural bar. *Virk v. Miss. Dep't of Revenue*, 133 So. 3d 809, 814-15, 816 (Miss. 2014). *See 5K Farms, Inc. v. Dep't of Revenue*, 94 So. 3d 221, 224-25 (Miss. 2010); *In re D.O.*, 798 So. 2d 417, 424 (Miss. 2001); *Pickens v. Donaldson*, 748 So. 2d 684, 691 (Miss. 1999); M.R.C.P. 24(d) (The "party asserting the unconstitutionality of a statute shall notify the Attorney General . . . to afford him an opportunity to intervene and argue the question of constitutionality."); M.R.A.P. 44(a). Here, though this issue neither has been raised nor briefed by the parties, it is apparent from AT&T's brief that the requisite notice was provided to the Attorney General. The Attorney General did not seek to intervene.

Tax Commission Board of Review, which affirmed the assessment in full on November 14, 2003. AT&T then appealed the decision of the Board of Review to the full Commission, which, on April 7, 2004, affirmed the assessment in the reduced amount of $10,703,608. The Tax Commission's order required that AT&T pay a revised assessment of $11,864,298, which included up-to-date interest.

¶3.     On August 6, 2004, AT&T timely appealed the order of the Tax Commission to the Chancery Court of the First Judicial District of Hinds County and posted an appeal bond in the amount of $23,728,596, twice the revised assessment. According to the stipulation of facts:

> The auditors included in business income dividends received by AT&T Corp. from certain subsidiaries which were deemed non-taxable in Mississippi in the year of the distribution. The auditors excluded from business income dividends received by AT&T Corp. from subsidiaries which were deemed taxable in Mississippi in the year of the distribution. Due to the unitary multistate activities of AT&T Corp., the business income of AT&T Corp. so determined had to be apportioned to Mississippi using a single sales factor apportionment formula to arrive at the net Mississippi taxable income subject to the Mississippi income tax. . . .

Further, according to the stipulation, the Department interprets Mississippi Code Section 27-7-15(4)(i) "to permit a recipient of an intercompany dividend to exclude that dividend from the calculation of its gross income if the distributing corporation is doing business in Mississippi in the year of the distribution and files a Mississippi Income Tax Return for that year." Conversely, the Department interprets Mississippi Code Section 27-7-15(4)(i) "to not permit a recipient of an intercompany dividend to exclude that dividend from the calculation

3

of its gross income if the distributing corporation is not doing business in Mississippi in the year of the distribution or did not file a Mississippi Income Tax Return for that year."

¶4.     According to the stipulation, the Department applies Mississippi Code Section 27-7-15(4)(i) "without any consideration of whether the income of the distributing corporation which gave rise to the dividends at issue had already been fully taxed by that distributing corporation's home state, state of domicile, or states in which it conducted business and/or was taxable." The Department's "sole criteria [sic] in its interpretation and application of Miss. Code Ann. Section 27-7-15(4)(i) is whether or not the distributing corporation is doing business in Mississippi in the year of the distribution and has filed a Mississippi Income Tax Return for that year."

¶5.     For the tax years in issue, the stipulation specifies the amounts of dividends excluded from gross income for AT&T's Mississippi subsidiaries (nexus subsidiaries), called nexus dividends, and the amounts of dividends included in gross income for AT&T's non-Mississippi subsidiaries (non-nexus subsidiaries), termed non-nexus dividends.[2] AT&T

---

[2] The AT&T non-nexus subsidiaries for the tax years in issue included AT&T Communications of New England, Inc.; AT&T Communications of New York, Inc.; AT&T Communications of New Jersey, Inc.; AT&T Communications of Pennsylvania, Inc.; AT&T Communications of Delaware, Inc.; AT&T Communications of Washington, D.C.; Inc., AT&T Communications of Maryland, Inc.; AT&T Communications of Virginia, Inc.; AT&T Communications of West Virginia, Inc.; AT&T Communications of the Southern States, Inc.; AT&T Communications of Ohio, Inc.; AT&T Communications of Michigan, Inc.; AT&T Communications of Indiana, Inc.; AT&T Communications of Wisconsin, Inc.; AT&T Communications of Illinois, Inc.; AT&T Communications of the Midwest, Inc.; AT&T Communications of the Southwest, Inc.; AT&T Communications of the Mountain States, Inc.; AT&T Communications of the Pacific Northwest, Inc.; AT&T Communications of California, Inc.; AT&T Communications of Nevada, Inc.; Actuarial Sciences Associates, Inc.; AT&T of the Virgin Islands, Inc.; and AT&T of Puerto Rico, Inc.

4

was permitted "to exclude the Nexus Dividends from its gross income pursuant to Miss. Code Ann. Section 27-7-15(4)(i) because the distributing companies were subject to Mississippi income tax [for the tax years in issue] by doing business in Mississippi during [those tax years] and being included in the group Mississippi Income Tax Return[s] for those years]." While the nexus subsidiaries were excused from taxes on dividends, AT&T was not permitted to exclude "Non-Nexus Dividends from . . . gross income pursuant to Miss. Code Ann. Section 27-7-15(4)(i) . . . ." The dividends AT&T received from non-nexus subsidiaries were not excluded from gross income "because none of the distributing companies were [sic] found by the auditors to have been doing business in Mississippi [in the relevant tax years] and did not file [] Mississippi corporate income tax return[s for the tax years in issue]."

¶6.     AT&T claimed in its Petition for Appeal of Additional Income Tax Assessment, filed on August 6, 2004, that Mississippi Code Section 27-7-15(4)(i) "establishes a discriminatory method of taxation" in violation of the Commerce Clause, and the Due Process and Equal Protection Clauses, of the United States Constitution. According to AT&T, the tax scheme "improperly favors taxpayers owning subsidiaries doing business in Mississippi by excluding from the taxpayer's gross income dividend income received from such subsidiaries, while denying such an exemption for dividends received from subsidiaries which do not conduct business in Mississippi . . . ." AT&T sought, *inter alia*, a reduction to zero of the additional income tax, penalties, and interest assessed, a declaration of the statute's unconstitutionality, and an injunction against the statute's enforcement.

5

¶7. The Tax Commission answered on September 9, 2004, and counterclaimed, seeking a judgment against AT&T for the $10,703,608 it claimed was due. AT&T filed a reply to the counterclaim on September 30, 2004, and denied that the Tax Commission had decided the issue of the constitutionality of Section 27-7-15(4)(i). The record indicates that the parties agreed to an order holding the case in abeyance on April 6, 2006. According to the Department's brief, the case was held in abeyance due to similar litigation in the chancery court, which ultimately was appealed to the Mississippi Supreme Court. *See Miss. Dep't of Revenue v. AT&T Corp.*, 101 So. 3d 1139 (Miss. 2012) (*AT&T 1*). In that case, the chancery court had ruled, *inter alia*, that Mississippi Code Section 27-7-15(4)(i) violated the Commerce Clause. *AT&T 1*, 101 So. 3d at 1142. Because AT&T had not followed statutory procedures for contesting tax assessments and had not posted a bond, but instead had paid the assessed taxes "under protest," this Court reversed and rendered the judgment, holding that the chancery court was without jurisdiction. *Id.* at 1149.

¶8. A scheduling order was entered in the present case on December 16, 2013. AT&T sought partial summary judgment on March 24, 2014, arguing, *inter alia*, that Mississippi Code Sections 27-7-37(2)(a)(i) and 27-7-15(4)(i) "facially discriminate[] against interstate commerce in violation of the Commerce Clause" by prohibiting "a multistate taxpayer from filing a consolidated Mississippi income tax return and from availing itself of significant and generally available tax benefits, based solely on the fact that the taxpayer is operating on a multistate basis." AT&T sought judgment as a matter of law, a declaration that "the improper statutory restrictions at issue are unconstitutional and invalid," an injunction against

6

enforcement of the statutes, and permission "to take full advantage of those significant and generally available tax benefits which have previously been made available to other taxpayers in the State." On May 12, 2014, the parties filed the stipulation of facts referenced above.

¶9. On May 30, 2014, AT&T filed an Amended Motion for Summary Judgment, the parties having "amicably resolved the dispute regarding the constitutionality of the restrictions contained in Section 27-7-37(2)(a)(i) . . . ." AT&T claimed in its motion that Section 27-7-15(4)(i) afforded significant tax benefits to nexus subsidiaries and treated "interstate commerce less favorably than intrastate commerce" and asked the court "[to] declare the improper statutory restrictions at issue unconstitutional and invalid, [to] enjoin enforcement of same, and [to] permit AT&T to exclude from its gross income all dividends received from its Non-Nexus Subsidiaries . . . ." On June 23, 2014, the Department filed its response to AT&T's amended summary judgment motion and a Cross-Motion for Summary Judgment, and the parties presented further responsive filings.

¶10. The Chancery Court of the First Judicial District of Hinds County analyzed the constitutionality of Section 27-7-15(4)(i) pursuant to the United States Supreme Court's four-prong test for evaluating the constitutionality of state tax statutes: (1) the tax must be applied to an activity with a substantial nexus with the taxing state; (2) the tax must be fairly apportioned; (3) the tax must not discriminate against interstate commerce; and (4) the tax must be fairly related to the services provided by the state. *See Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S. Ct. 1076, 51 L. Ed. 2d 326 (1977). The chancery court

7

found that Section 27-7-15(4)(i) exempts from the taxpayer's gross income only dividends the taxpayer received from domestic subsidiaries, but not those dividends the taxpayer received from out-of-state subsidiaries. As such, the chancery court found that Section 27-7-15(4)(i) denies taxpayers the benefit of deducting dividends from gross income "based solely upon the choice of the taxpayer and its subsidiaries not to locate any operations in Mississippi or to file a Mississippi income tax return."

¶11. The chancery court noted that "[o]ur United States Supreme Court has defined discrimination as the 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" (quoting *Or. Waste Sys. v. Dep't of Envtl. Quality,* 511 U.S. 93, 99, 114 S. Ct. 1345, 128 L. Ed. 2d 13 (1994)). Because Section 27-7-15(4)(i) provides a valuable tax exemption "based solely upon an interstate element," the chancery court found that it "clearly favors domestic corporations over foreign competitors and discourages corporations from choosing to locate their operations outside Mississippi." As such, the chancery court held that Section 27-7-15(4)(i) is facially discriminatory.

¶12. The chancery court then considered the United States Supreme Court's holding that, while a tax may be facially discriminatory, it survives scrutiny if it constitutes a "'compensatory tax' designed simply to make interstate commerce bear a burden already borne by interstate commerce." (citing *Fulton Corp. v. Faulkner*, 516 U.S. 325, 331, 116 S. Ct. 848, 133 L. Ed. 2d 796 (1996)). The chancery court found that the Department had failed to present evidence demonstrating that Section 27-7-15(4)(i) is a compensatory tax:

"It is clear to this Court that the subject statute is not an avoidance of double taxation, as suggested by the Department, as the statute is not linked to the amount of the tax the distributing corporation paid and actually results in double taxation to certain distributing corporations."

¶13. Ultimately, the chancery court granted summary judgment to AT&T and invalidated Section 27-7-15(4)(i). It determined that the "only appropriate remedy which would place AT&T on even footing with those taxpayers who enjoyed the subject tax benefits is to strike the offensive limitations and grant those applicable tax benefits to AT&T for the tax years at issue," such that "the application of the dividend exclusion will result in no additional income tax liability for AT&T for the relevant tax years."

¶14. Aggrieved, the Department filed a notice of appeal on April 8, 2015.[3]

**STANDARD OF REVIEW**

¶15. This Court reviews a chancery court's grant or denial of summary judgment *de novo*. *Miss. Dep't of Revenue v. Hotel and Rest. Supply*, 192 So. 3d 942, 945 (Miss. 2016) (citing *Miss. Dep't of Revenue v. Isle of Capri Casinos, Inc.*, 131 So. 3d 1192, 1194 (Miss. 2014)). "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories and

---

[3] We note that two briefs have been filed by *amici curiae* in support of AT&T Corporation. The first was filed on behalf of the R.J. Reynolds Tobacco Company and Sysco Corporation by J. Paul Varner, Esq., and J. Stevenson Ray, Esq., of Butler Snow LLP and Craig B. Fields, Esq., *pro hac vice*, and Mitchell Newmark, Esq., *pro hac vice*, of Morrison & Foerster LLP. The second was filed on behalf of the Council on State Taxation by Louis G. Fuller, Esq., and Katie L. Wallace, Esq., of Brunini, Grantham, Grower & Hewes, PLLC, and Marilyn A. Wethekam, Esq., *pro hac vice*, and Christopher T. Lutz, Esq., *pro hac vice*, of Horwood Marcus & Berk Chartered.

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Castigliola v. Miss. Dep't of Revenue*, 162 So. 3d 795, 801 (Miss. 2015) (quoting Miss. R. Civ. P. 56(c)).

¶16. "This Court applies a de novo standard of review when addressing a statute's constitutionality." *Commonwealth Brands, Inc. v. Morgan*, 110 So. 3d 752, 758 (Miss. 2013) (citing *Johnson v. Sysco Food Servs.*, 86 So. 3d 242, 243 (Miss. 2012)).

¶17. The Department asks this Court to apply an arbitrary and capricious standard to the 2003 Tax Commission assessment against AT&T:

> [W]hen reviewing appeals of administrative-agency decisions, we will reverse such a decision only where a petitioner raises and proves "one or more of the following: the agency's decision was unsupported by substantial evidence, the agency's decision was arbitrary and capricious, the agency's decision was beyond the power of the administrative agency to make, [or] the agency's decision violated the complaining party's statutory or constitutional right."

*Castigliola*, 162 So. 3d at 802 (quoting *Equifax, Inc. v. Miss. Dep't of Rev.*, 125 So. 3d 36, 41 (Miss. 2013), *reh'g denied* (Nov. 21, 2013), *cert. denied sub nom. Equifax, Inc. v. Miss. Dep't of Revenue*, __U.S.__, 134 S. Ct. 2872, 189 L. Ed. 2d 833 (2014) (citing *Buffington v. Miss. State Tax Comm'n*, 43 So. 3d 450, 453-54 (Miss. 2010))). The Department argues that, because the assessment had been based upon a statute which had not been deemed unconstitutional at that time, it "was neither arbitrary nor capricious nor violative of AT&T's constitutional right in its decision."

¶18. But in neither *Castigliola* nor in *Equifax* was the question of the constitutionality of the tax statute before this Court. In *Castigliola*, this Court reversed the chancellor's grant of

10

summary judgment to the Department because "the tax assessment was unsupported by law or regulation and was therefore arbitrary and capricious." *Castigliola*, 162 So. 3d at 805.

¶19.    And in *Equifax*, the chancellor had rejected the constitutional challenge to the statute in issue and, therefore, "limited his analysis to determining whether Equifax had proven that it was entitled to reversal of the Commission's decision for any of the prescribed legal bases for reversing an agency decision . . . ." *Equifax*, 125 So. 3d at  42. The Mississippi Court of Appeals had reversed the chancellor, finding that "a *de novo* standard applies to judicial review of Commission decisions . . . ." *Id.* at 40. But this Court reversed the Court of Appeals, finding that Section 27-77-7(4) (Rev. 2005)[4] merely "provides a judicial forum to try anew (or for the first time) the legal issues raised by the taxpayer in chancery court." *Id.* at 42. The chancery court's "limited purpose is only to examine whether the Commission's decision was supported by substantial evidence, was not arbitrary and capricious, was within

---

[4] According to this Court, the 2005 version of Section 27-77-7(4) read as follows: "the chancery court shall give deference to the decision and interpretation of law and regulations by the commission as it does with the decisions and interpretation of any administrative agency, but it shall try the case de novo and conduct a full evidentiary judicial hearing on the issues raised." *Equifax*, 125 So. 3d at 41 (quoting Miss. Code Ann. § 27-77-7(4) (Rev. 2005)). Currently, this provision appears in Mississippi Code Section 27-77-7(5) and provides:

> [T[he chancery court shall give no deference to the decision of the Board of Tax Appeals, the Board of Review or the Department of Revenue, but shall give deference to the department's interpretation and application of the statutes as reflected in duly enacted regulations and other officially adopted publications. The chancery court shall try the case de novo and conduct a full evidentiary judicial hearing on all factual and legal issues raised by the taxpayer which address the substantive or procedural propriety of the actions of the Department of Revenue being appealed.

Miss. Code Ann. § 27-77-7(5) (Supp. 2016).

the Commission's power to make, and did not violate the taxpayer's statutory or constitutional rights." *Id.*

¶20. In the present case, the then-Tax Commission declined to consider the statute's constitutionality: "[t]he Commission finds that the statutes passed by the Mississippi Legislature are presumed constitutional until set aside by a court of competent jurisdiction." The stipulation of facts reflects the same: "neither the Board of Review nor the Tax Commission entertained or ruled upon the Company's constitutional defenses to the Assessment . . . . Accordingly, the current judicial proceeding is the Company's first and only opportunity to present and obtain a hearing on these constitutional defenses to the Assessment."

¶21. Further, even applying the arbitrary and capricious standard to this case, the chancery court ruled, as AT&T argued, that an assessment of taxes pursuant to an unconstitutional statute would be "arbitrary and capricious by its very nature." AT&T also argues that an assessment pursuant to an unconstitutional statute would violate "the complaining party's statutory or constitutional right." *Castigliola*, 162 So. 3d at 802 (quoting *Equifax*, 125 So. 3d at 41) (quoting *Buffington*, 43 So. 3d at 454)).

¶22. Because the chancery court was the only tribunal to have considered the constitutionality of Section 27-7-15(4)(i), we find that there was no Tax Commission decision to review. Therefore, the application of a *de novo* standard was appropriate, and this Court should apply such standard in reviewing the chancellor's determination that Section 27-7-15(4)(i) is unconstitutional.

**ANALYSIS**

1. **Whether Mississippi Code Section 27-7-15(4)(i) violates the dormant aspect of the Commerce Clause of the United States Constitution.**

¶23. The Commerce Clause of the United States Constitution authorizes Congress "[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. That seemingly simple phrase resulted from a concern among the Framers "that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation.'" *Md. v. Wynne*, __U.S.__, 135 S. Ct. 1787, 1794, 191 L. Ed. 2d 813 (2015) (quoting *Hughes v. Okla.*, 441 U.S. 322, 325-326, 99 S. Ct. 1727, 60 L. Ed. 2d 250 (1979)).

¶24. While "the Clause is framed as a positive grant of power to Congress," the United States Supreme Court "'consistently [has] held this language to contain a further, negative command, known as the dormant Commerce Clause, prohibiting certain state taxation even when Congress has failed to legislate on the subject.'" *Wynne*, 135 S. Ct. at 1794 (quoting *Okla. Tax Comm'n v. Jefferson Lines*, 514 U.S. 175, 179, 115 S. Ct. 1331, 131 L. Ed. 2d 261 (1995)). "In its negative aspect, the Commerce Clause 'prohibits economic protectionism—that is, "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."'" *Fulton Corp. v. Faulkner*, 516 U.S. 325, 330, 116 S. Ct. 848, 133 L. Ed. 2d 796 (1996) (quoting *Associated Indus. of Mo. v. Lohman*, 511 U.S.

641, 647, 114 S. Ct. 1815, 128 L. Ed. 2d 639 (1994) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273-74, 108 S. Ct. 1803, 100 L. Ed. 2d 302 (1988))).

¶25.    "By prohibiting States from discriminating against or imposing excessive burdens on interstate commerce without congressional approval, it strikes at one of the chief evils that led to the adoption of the Constitution, namely, state tariffs and other laws that burdened interstate commerce." *Wynne*, 135 S. Ct. at 1794 (citing *Faulkner*, 516 U.S. at 330-31). According to the Court:

> This reading effectuates the Framers' purpose to "preven[t] a State from retreating into economic isolation or jeopardizing the welfare of the Nation as a whole, as it would do if it were free to place burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear."

*Faulkner*, 516 U.S. at 330-31 (quoting *Jefferson Lines*, 514 U.S. at 180).

¶26.    According to the precedents of the Supreme Court, the dormant aspect of the Commerce Clause prohibits States from "'discriminat[ing] between transactions on the basis of some interstate element.'" *Wynne*, 135 S. Ct. at 1794 (quoting *Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318, 332, n.12, 97 S. Ct. 599, 50 L. Ed. 2d 514 (1977)). More specifically, a state is not permitted to "'tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State.'" *Wynne*, 135 S. Ct. at 1794 (quoting *Armco, Inc. v. Hardesty*, 467 U.S. 638, 642, 104 S. Ct. 2620, 81 L. Ed. 2d 540 (1984)). Further, a state may not "'impose a tax which discriminates against interstate commerce either by providing a direct commercial advantage to local business, or by subjecting interstate commerce to the burden of 'multiple taxation.'" *Wynne*, 135 S. Ct. at

14

1794 (quoting ***Nw. States Portland Cement Co. v. Minn.***, 358 U.S. 450, 458, 79 S. Ct. 357, 3 L. Ed. 2d 421 (1959)).

¶27.     This Court applies the four-part test from the United States Supreme Court in determining whether a tax violates the dormant aspect of the Commerce Clause: in order to comport with the Commerce Clause, "a tax must: (1) be imposed on an activity with a substantial nexus with the taxing state; (2) be fairly apportioned, based on the activity within the taxing state; (3) not discriminate against interstate commerce; and (4) be fairly related to services provided by the taxing state." ***Morgan***, 110 So. 3d at 758 (citing ***Complete Auto***, 430 U.S. at 279).

¶28.     At the outset of its argument, the Department claims that "[t]he ***Complete Auto*** analysis addresses when a tax, not a deduction, is constitutional." (citing ***Dep't of Revenue of Ky. v. Davis***, 553 U.S. 328, 338-340, 128 S. Ct. 1801, 170 L. Ed. 2d 685 (2008); ***Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of Or.***, 511 U.S. 93, 114 S. Ct. 1345, 128 L. Ed. 2d 13 (1994)). AT&T responds that the United States Supreme Court has applied ***Complete Auto*** "to invalidate a wide range of state tax credits, deductions and exemptions." AT&T cites the following cases:

> ***Wynne***, 135 S. Ct. 1787 (applying ***Complete Auto Transit*** to invalidate a Maryland income tax statute that unconstitutionally prohibited the application of credits against local income taxes); ***Camps Newfound/Owatonna, Inc. v. Town of Harrison,*** 520 U.S. 564 (1997) (applying the case to invalidate a Maine *ad valorem* tax exemption that unconstitutionally restricted the exemption based on the residency of those served by a particular charity); ***Fulton Corp.***, 516 U.S. 325 (applying the case to invalidate a North Carolina intangibles tax deduction based on the extent of the in-state activity of the company issuing the stock upon which the tax was levied); ***Armco***, 467 U.S. 638 (applying the case to invalidate a West Virginia gross receipts tax based

15

on an unconstitutionally narrow exemption limited only to local manufacturers); ***Maryland v. Louisiana***, 451 U.S. 725 (1981) (applying the case to invalidate Louisiana's first-use tax on natural gas based in part on a discriminatory pattern on credits and exemptions).

¶29. The Department cites two cases to support its position, ***Davis*** and ***Oregon Waste Systems***. But in ***Davis***, the United States Supreme Court considered a Commerce Clause challenge to Kentucky's scheme of exempting from taxable income interest on bonds issued by Kentucky and its political subdivisions, while taxing bonds issued by other states and the respective subdivisions thereof. ***Davis***, 553 U.S. at 333. The United States Supreme Court found that "[s]tate and local governments that provide public goods and services on their own, unlike private businesses, are 'vested with the responsibility of protecting the health, safety, and welfare of [their] citizens,' . . . and laws favoring such States and their subdivisions may 'be directed toward any number of legitimate goals unrelated to protectionism.'" ***Id.*** at 340 (quoting ***United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.,*** 550 U.S. 330, 343, 127 S. Ct. 1786, 167 L. Ed. 2d 655 (2007)). The "'market-participation' exception reflects a 'basic distinction . . . between States as market participants and States as market regulators,' . . . '[t]here [being] no indication of a constitutional plan to limit the ability of the States themselves to operate freely in the free market." ***Davis***, 553 U.S. at 339 (quoting ***Reeves, Inc. v. Stake***, 447 U.S. 429, 436-37, 100 S. Ct. 2271, 65 L. Ed. 2d 244 (1980)).

¶30. The Court continued that "in the paradigm of unconstitutional discrimination the law chills interstate activity by creating a commercial advantage for goods and services marketed by local private actors, not by governments and those they employ to fulfill their civic

16

objectives," as with the issuance of bonds, the purpose of which is to "shoulder the cardinal civic responsibilities listed in *United Haulers*: protecting the health, safety, and welfare of citizens." *Davis*, 553 U.S. at 347, 342. The Court held that the "Kentucky tax scheme falls outside the forbidden paradigm because the Commonwealth's direct participation favors not local private entrepreneurs, but the Commonwealth and local governments." *Id.* at 348.

¶31.   *Davis* involved a tax scheme which exempted from taxable income interest on intrastate bonds, while taxing interstate bonds. So too, here, in-state dividends received from corporate subsidiaries are exempted from taxation, while tax is imposed upon interstate corporate dividends. The difference between this case and *Davis*—and the reason *Davis* does not apply here—is that *Davis* involved a tax scheme which benefitted the state and local governments in Kentucky by incentivizing the purchase of intrastate bonds. In *Davis*, the tax scheme at issue was facially discriminatory, which was why the Court went on to analyze the market-participation exception as a legitimate state interest. *Davis*, 553 U.S. at 338-39 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 25 L. Ed. 2d 174 (1970) ("Absent discrimination for the forbidden purpose, however, the law 'will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'")). Here, the Department specifically argues that Section 27-7-15(4)(i) is *not* facially discriminatory: "Mississippi has never stipulated to and has never conceded the issue of facial discrimination. The statute on its face does not discriminate against interstate commerce."

17

¶32. The second case cited by the Department is *Oregon Waste*, in which the United States Supreme Court outright determined that Oregon's regulatory scheme, which imposed a substantially higher "surcharge" on persons engaged in the disposal of out-of state solid waste while a considerably lower fee was imposed on "in-state disposal of waste generated within Oregon," was facially discriminatory. *Or. Waste*, 511 U.S. at 96. Accordingly, "the surcharge must be invalidated unless respondents can 'sho[w] that it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.'" *Id.* at 100-101 (quoting *New Energy Co. of Ind. v. Limbach,* 486 U.S. 269, 278, 108 S. Ct. 1803, 1810, 100 L. Ed. 2d 302 (1988)). The Court rejected the argument that the higher surcharge on out-of-state waste was legitimate as "a 'compensatory tax' necessary to make shippers of such waste pay their 'fair share' of the costs imposed by Oregon by the disposal of their waste in the State" and declared the law to be invalid under the dormant aspect of the Commerce Clause. *Or. Waste*, 511 U.S. at 101, 108.

¶33. In both of the cases cited by the Department, the United States Supreme Court determined the tax laws in issue to have been facially unconstitutional. The Court, having declared the tax laws in issue facially unconstitutional, proceeded to address the existence of or the absence of a legitimate state interest. In the present case, the Department has not conceded that Section 27-7-15(4)(i) is facially discriminatory. Therefore, regardless of whether the challenged statute is a "deduction" or a "tax," is not determinative of whether *Complete Auto* applies. But, before delving into a determination of whether the State has

18

advanced a legitimate state interest in enacting Section 27-7-15(4)(i), this Court first must apply the ***Complete Auto*** test.

¶34.    Additionally, AT&T argues that the Department's argument is unavailing in light of the fact that Section 27-7-15(4)(i) is not an actual deduction. AT&T argues that Section 27-7-15(4) "expressly excludes each item enumerated in that subsection from the statutory definition of 'gross income' and, therefore, none of those items ever enters the scope of Mississippi's taxing authority." First, Section 27-7-15(1) defines "gross income" to include, "except as otherwise provided . . . the income of a taxpayer derived from salaries, wages, fees or compensation for service, of whatever kind and in whatever form paid, including . . . dividends . . . ." Miss. Code Ann. § 27-7-15(1) (Rev. 2013). And Section 27-7-15(4) then specifies that "[t]he words 'gross income' do not include the following items of income which *shall be exempt* from taxation under this article: . . . (i) [i]ncome from dividends that has already borne a tax as dividend income under the provisions of this article, when such dividends may be specifically identified in the possession of the recipient." Miss. Code Ann. § 27-7-15(4)(i) (emphasis added).

¶35.    AT&T contrasts Section 27-7-15(4) with Section 27-7-17, which provides that, "[i]n computing taxable income," certain items are "allowed as deductions."  Miss. Code Ann. § 27-7-17 (Rev. 2013). AT&T argues that the difference "between the items identified under Section 27-7-17 and those under Section 27-7-15(4) are that the former already will have entered gross income and are subsequently removed via a statutory reduction" and the latter "never enter a taxpayer's gross income in the first place." Thus, according to AT&T, the

19

dividends contemplated by Section 27-7-15(4)(i) "are entirely beyond the Department's authority to tax."

¶36.    AT&T notes this Court's recent decision in *Castigliola,* 162 So. 3d at 799, in which this Court stated that "[w]hile this Court has never explicitly found a distinction between an exemption and an exclusion, our caselaw makes it abundantly clear that Mississippi has long recognized such a distinction." As an initial matter, the Department "carries the burden to establish that a particular transaction falls within its statutory power to tax." *Id.* (citing *Stone v. Rogers*, 186 Miss. 53, 189 So. 810, 812 (1939)). Should the Department fail to carry its burden, "that transaction necessarily will be excluded from taxation." *Id.*

¶37.    In *Castigliola*, the Department's own regulations provided that casual sales were not subject to Mississippi sales tax, so this Court determined that "the casual-sales exception to sales and use tax is an exclusion and not an exemption;" thus the Department bore the burden of proving that "Castigliola's boat purchase was within the State's authority to tax." *Castigliola*, 162 So. 3d at 801. But, here, without delving unnecessarily deeply into the morass, the statute specifically provides that dividend income that already has borne a tax "shall be *exempt*." Miss. Code Ann. § 27-7-15(4)(i) (emphasis added). AT&T's argument therefore is unavailing in light of plain statutory language, which was not present in *Castigliola*. AT&T does not cite any departmental regulation to support its argument that dividends received by AT&T from out-of-state subsidiaries are beyond the Department's statutory authority to tax under *Castigliola*. However, AT&T is correct that Section 27-7-15(4) is not a "deduction," as claimed by the Department.

20

¶38. For the foregoing reasons, we find that a ***Complete Auto*** analysis should be applied to this case. We address only the second ***Complete Auto*** factor, which we find dispositive.[5]

> *Whether the dividend-received exemption is fairly apportioned—internal and external consistency.*

¶39. The central purpose of fair apportionment "'is to ensure that each State taxes only its fair share of an interstate transaction.'" ***Jefferson Lines***, 514 U.S. at 184 (quoting ***Goldberg v. Sweet***, 488 U.S. 252, 260-61, 109 S. Ct. 582, 102 L. Ed. 2d 607 (1989)). The United States Supreme Court addresses "any threat of malapportionment by asking whether the tax is 'internally consistent' and, if so, whether it is 'externally consistent' as well." ***Jefferson Lines***, 514 U.S. at 184.

¶40. "Internal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would not also bear." ***Id.*** at 185. The test "simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with intrastate commerce." ***Id.*** "A failure of internal consistency shows as a matter of law that a State is attempting to take more than its fair share of taxes from the interstate transaction, since allowing such tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax." ***Id.*** Conversely, external consistency "looks not to the logical consequences

---

[5] On appeal, as in the trial court, AT&T makes no argument regarding whether Section 27-7-14(4)(i) is "applied to an activity with a substantial nexus with the taxing state," the first of the ***Complete Auto*** factors. ***Complete Auto***, 430 U.S. at 278. AT&T appears to concede that Section 27-7-15(4)(i) is applied to an activity with a substantial nexus with Mississippi, and that such substantial nexus, in fact, exists.

of cloning, but to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State." *Id.*

¶41.    Recently, the United States Supreme Court has considered the internal consistency test in the context of a Maryland statutory scheme by which Maryland taxes the income its residents earn both within and without the state, but, unlike most other states, "does not offer its residents a full credit against the income taxes they pay to other States." *Wynne*, 135 S. Ct. at 1792. Specifically, "[i]f Maryland residents pay income tax to another jurisdiction for income earned there, Maryland allows them a credit against the 'state' tax, but not the 'county' tax . . . . As a result, part of the income that a Maryland resident earns outside the State may be taxed twice." *Id.* Further, nonresident income also is taxed: "nonresidents must pay the 'state' income tax on all the income that they earn from sources within Maryland" and nonresidents "not subject to the county tax must pay a 'special nonresident tax' in lieu of the 'county' tax." *Id.*

¶42.    The Court analyzed the scheme, noting that the virtue of the internal consistency test is that:

> It allows courts to distinguish between (1) tax schemes that inherently discriminate against interstate commerce without regard to the tax policies of other States, and (2) tax schemes that create disparate incentives to engage in interstate commerce (and sometimes result in double taxation) only as a result of the interaction of two different but nondiscriminatory and internally consistent schemes.

*Id.* at 1802. "Tax schemes that fail the internal consistency test will fall into the first category, not the second: '[A]ny cross-border tax disadvantage that remains after application

of the [test] cannot be due to tax disparities' but is instead attributable to the taxing State's discriminatory policies alone." *Id.*

¶43.    The Court determined that Maryland's tax scheme failed the internal consistency test, which it illustrated with the following hypothetical:

> Assume that every State imposed the following taxes, which are similar to Maryland's 'county' and 'special nonresident' taxes: (1) a 1.25% tax on income that residents earn in State, (2) a 1.25% tax on income that residents earn in other jurisdictions, and (3) a 1.25% tax on income that nonresidents earn in State. Assume further that two taxpayers, April and Bob, both live in State A, but that April earns her income in State A whereas Bob earns his income in State B. In this circumstance, Bob will pay more income tax than April solely because he earns income interstate. Specifically, April will have to pay a 1.25% tax only once, to State A. But Bob will have to pay a 1.25% tax twice: once to State A, where he resides, and once to State B, where he earns the income.

*Id.* at 1803-04. According to the Court, the Maryland "scheme's discriminatory treatment of interstate commerce is not simply the result of its interaction with the taxing schemes of other States. Instead, the internal consistency test reveals what the undisputed economic analysis shows," that "Maryland's tax scheme is inherently discriminatory and operates as a tariff." *Id.* at 1804.

¶44.    Another hypothetical further illustrated the point:

> Assume that State A imposes a 5% tax on the income that its residents earn in-state but a 10% tax on income they earn in other jurisdictions. Assume also that State A happens to grant a credit against income taxes paid to other States. Such a scheme discriminates against interstate commerce because it taxes income earned interstate at a higher rate than income earned intrastate. This is so despite the fact that, in certain circumstances, a resident of State A who earns income interstate may pay less tax to State A than a neighbor who earns income intrastate. For example, if Bob lives in State A but earns his income in State B, which has a 6% income tax rate, Bob would pay a total tax of 10% on his income, though 6% would go to State B and (because of the credit) only

23

4% would go to State A. Bob would thus pay less to State A than his neighbor, April, who lives in State A and earns all of her income there, because April would pay a 5% tax to State A. But Bob's tax burden to State A is irrelevant; his total tax burden is what matters.

*Id.* at 1805. However, "Maryland could remedy the infirmity in its tax scheme by offering, as most States do, a credit against income taxes paid to other States" and, therefore, "Maryland's tax scheme would survive the internal consistency test and would not be inherently discriminatory." *Id.* By way of further example:

In that circumstance, April (who lives and works in State A) and Bob (who lives in State A but works in State B) would pay the same tax. Specifically, April would pay a 1.25% tax only once (to State A), and Bob would pay a 1.25% tax only once (to State B, because State A would give him a credit against the tax he paid to State B).

*Id.* at 1806.

¶45. This Court likewise has applied the internal consistency test to a law enacted by the legislature which imposed:

a fee on the sale, purchase, and distribution in Mississippi of cigarettes manufactured by companies that did not enter into settlement agreements with the State of Mississippi as a result of a 1997 lawsuit (the "nonsettling manufacturer" or "NSM" law), "including cigarettes sold, purchased or otherwise distributed in this state for *sale outside of this state*."

*Commonwealth Brands*, 110 So. 3d at 756 (citing Miss. Code Ann. § 27-70-5 (Rev. 2010)) (emphasis in original).

¶46. This Court held that the NSM law failed to satisfy the internal consistency test as a matter of law, because "[t]he distribution of cigarettes in Mississippi for ultimate sale outside the state involves separate transactions: (1) the Mississippi distributor's acquisition of products from Commonwealth and (2) the sale of those products in another state—say,

24

Louisiana." ***Commonwealth Brands***, 110 So. 3d at 759. "If Louisiana enacted a statute identical to the Mississippi NSM law, then Mississippi would impose a fee on transaction (1) and Louisiana would impose a fee on transaction (2)." ***Id.*** Two fees would thus be imposed on the same cigarettes, which had been sold *interstate*. ***Id.*** at 760. By contrast, "if the cigarettes acquired by the Mississippi distributor were sold *intrastate*, they would be subject to only one fee—under the Mississippi NSM law." ***Id.*** Consequently, "[a]lthough each state would impose its fee on a *separate transaction*, cigarettes sold in interstate commerce would bear a second fee that those sold in intrastate commerce would not." ***Id.*** (emphasis in original).

¶47.    AT&T argues that Section 27-7-15(4)(i) and the internally inconsistent tobacco fee in ***Commonwealth Brands*** are "fundamentally indistinguishable: both are designed specifically to impose a second level of state taxation on interstate transactions that comparable intrastate transactions do not suffer." According to AT&T, "[i]f every state were to adopt a law identical to Section 27-7-15(4)(i), each state in which the parent corporation operates would tax the earnings of every Non-Nexus Subsidiary a second time, a risk not faced by the Nexus Subsidiaries that maintained an intrastate presence in those same jurisdictions."

¶48.    AT&T presents a hypothetical, assuming that the non-nexus subsidiary operates in five states other than Mississippi, that the nexus subsidiary operates in the same five states *and* Mississippi, that each subsidiary apportions 100% of its income to the states in which it operates, and that each state (including Mississippi) applies a 5% corporate income tax

rate. In the context of a nexus subsidiary (having an intrastate presence, Mississippi imposes a tax on its earnings at the subsidiary level, but exempts the dividends paid by the nexus subsidiary to its parent). Conversely, Mississippi taxes an apportioned share of non-nexus subsidiary (having only an interstate presence but no taxable presence in Mississippi at the subsidiary level) earnings based solely on the non-nexus subsidiary's lack of a Mississippi presence. AT&T illustrates its argument with the following chart:

| | Non-Nexus Subsidiary | Nexus Subsidiary |
|---|---|---|
| Subsidiary's operating income | $1,000 | $1,000 |
| Average multistate tax rate | 5% | 5% |
| **State taxes on operating income** | **$50** | **$50** |
| Dividend to Parent (net of taxes) | $950 | $950 |
| Parent's Mississippi apportionment ratio | 20% | 20% |
| **Parent's Mississippi taxable income** | **$190** | **$0** |
| Mississippi tax rate | 5% | 5% |
| **Mississippi tax imposed on dividend** | **$9.50** | **$0** |
| **Total state taxes on subsidiary earnings** | **$59.50** | **$50.00** |

AT&T argues that the earnings of the non-nexus subsidiary thus are taxed twice. Consequently, "Mississippi's tax scheme unquestionably results in the Non-Nexus Subsidiary's earnings['] bearing a heavier multistate burden than the earnings of the Nexus Subsidiary, solely because the Non-Nexus Subsidiary does not maintain any intrastate operations within Mississippi." Therefore, according to AT&T, Mississippi's scheme

operates as an economic penalty, a tariff, solely imposed on those subsidiaries which choose to have no taxable presence in the state.

¶49. The Department responds with a case from New Hampshire in which the supreme court of that state considered the constitutionality of a statute "which permits a parent corporation to take a deduction for dividends received from its corporate subsidiaries when the gross business profits of the subsidiaries have already been subject to a tax in New Hampshire." *Gen. Elec. Co. v. N.H.*, 914 A.2d 246, 248 (N.H. 2006). General Electric was a "'unitary business,'" which New Hampshire law defined as "'one or more related business organizations engaged in business activity both within and without this state among which there exists a unity of ownership, operation, and use; or an interdependence in their functions.'" *Id.* at 249 (citation omitted).

¶50. Under New Hampshire law, tax liability of such a unitary business was calculated "using a combined reporting method that apportions the income of the unitary business to the state . . ." and the "income from all domestic members of the unitary business, which are collectively referred to as the 'water's edge combined group,' . . . is aggregated in the combined report." *Id.* (citations omitted). Furthermore, "income of foreign members of the unitary business is excluded from the combined report if the foreign members qualify as an 'overseas business organization,' . . . ," meaning "those business organizations 'with 80 percent or more of the average of their payroll and property assignable to a location outside the 50 states and the District of Columbia.'" *Id.* (citations omitted).

27

¶51. While the income of GE's foreign subsidiaries which qualified as overseas business organizations was excluded from the calculation of GE's tax liability, "the dividends paid to GE by its foreign subsidiaries remained subject to an apportioned tax." *Id.* at 250. Conversely, New Hampshire tax law allowed "for a deduction for dividends paid to taxable parent corporations by subsidiaries that conducted business in the state and were therefore subject" to state taxation. *Id.* GE claimed that the dividend-received deduction "discriminates against foreign commerce in violation of the Commerce Clause of the United States Constitution," specifically that the New Hampshire scheme "affords a deduction for dividends received from corporations that do business in New Hampshire, while it denies a deduction for dividends received from corporations that do not do business in New Hampshire." *Id.* at 254-55.

¶52. The Supreme Court of New Hampshire noted that the United States Supreme Court "requires analysis of the aggregate tax burden when reviewing a claim that a tax discriminates in violation of the Commerce Clause: 'a proper analysis must take the whole scheme of taxation into account.'" *Id.* at 257 (quoting ***Halliburton Oil Well Cementing Co. v. Reily***, 373 U.S. 64, 69, 83 S. Ct. 1201, 10 L. Ed. 2d 202 (1963)). "[W]e assess New Hampshire's taxing regime as a whole and look at the aggregate tax imposed upon a unitary business. 'A state tax must be assessed in light of its actual effect considered in conjunction with other provisions of the State's tax scheme.'" ***Gen. Elec.***, 914 A.2d at 257 (quoting ***Md. v. La.***, 451 U.S. 725, 756, 101 S. Ct. 2114, 68 L. Ed. 2d 576 (1981)). Here, the Department argues that such a view of the Mississippi tax scheme as a whole is "tax symmetry."

¶53.   *Compare **Kraft Gen. Foods, Inc. v. Iowa Dep't of Revenue***, 505 U.S. 71, 112 S. Ct. 2365, 120 L. Ed. 2d 59 (1992) (Iowa's tax scheme, a single entity system of reporting,[6] which allowed a deduction for dividends received from domestic subsidiaries, but did not allow a deduction for those dividends received from foreign subsidiaries, facially discriminated against foreign commerce and therefore violated the Foreign Commerce Clause,[7] since matters of concern to the entire nation were implicated by the disparate treatment) *with **Morton Thiokol, Inc. v. Kan.***, 864 P. 2d 1175 (Kan. 1993) ("In a combined filing state, such as Kansas, the hypothetical parent's tax base includes the combined federal taxable income of its combined domestic subsidiaries as well as dividends from foreign subsidiaries. We conclude there is no showing that this method is discriminatory under the holding in ***Kraft***; therefore, it is not violative of the federal Constitution's Commerce Clause."), *and **Du Pont de Nemours & Co. v. Me.***, 675 A.2d 82 (1996) ("Far from discriminating against foreign commerce, Maine's water's edge combined reporting method provides a type of 'taxing symmetry' that is not present under the single entity system. Although the dividends paid to parent corporations with domestic subsidiaries are not taxed, the apportioned income of the domestic subsidiaries is subject to tax. Because the income of the unitary domestic affiliates is included, apportioned, and ultimately directly taxed by Maine as a part of the parent

---

[6] "Pursuant to this taxing method Iowa directly taxed neither the income nor dividends of a domestic [United States] subsidiary if the subsidiary did not do business within the state. Iowa, however, did tax the dividends paid by the foreign subsidiary to the domestic parent." ***Du Pont de Nemours & Co. v. Me.***, 675 A.2d 82 (1996) (citing ***Kraft***, 505 U.S. at 74).

[7] "The Congress shall have Power . . . To regulate Commerce with foreign Nations . . . ." U.S. Const. art. I, § 8, cl. 3.

company's income, the inclusion of dividends paid by foreign subsidiaries does not constitute the kind of facial discrimination against foreign commerce that cause[s] the Supreme Court to invalidate Iowa's tax scheme in *Kraft*.")

¶54.    The New Hampshire Supreme Court, therefore, examined the entire taxing regime and noted that foreign subsidiaries conducting business in New Hampshire are assessed an apportioned tax based on its profits attributable to the state. *Gen. Elec.*, 914 A. 2d at 257. The dividends paid to the parent corporation also located within the state are deducted "up to the amount of business profits already taxed." *Id.*  A foreign subsidiary not doing business in the state is not subject to direct state taxation, but dividends paid to the parent "are apportioned and taxed as income," resulting in a one-time tax. *Id.* The New Hampshire Supreme Court approved of the scheme because if "both the unitary business with the foreign subsidiary operating in New Hampshire and the unitary business with the foreign subsidiary not operating in New Hampshire are each only taxed once, there is no 'differential treatment' that benefits the former and burdens the latter . . . ." *Id.* (citing *Or. Waste*, 511 U.S. at 99).

¶55.    Accordingly, the Department argues that "Mississippi's taxing statutory scheme is predicated on taxing the income from the unitary multistate business only once" and that the inclusion of an apportionment of non-nexus subsidiary dividends is based on the subsidiary's involvement in AT&T's unitary business.  The Department argues further that AT&T's application of the internal consistency test examines Section 27-7-15(4)(i) in a vacuum and that "[a] proper application of the internal consistency test applies Mississippi's scheme to all 50 states." In considering application of the tax scheme as a whole, argues the

30

Department, "each state in which a subsidiary operated would tax its apportioned share of the subsidiary's earnings at the subsidiary level," resulting in non-nexus subsidiary earnings' not being subject to state taxation at the subsidiary level; and "[w]hen the subsidiary's earnings are passed on to the parent in the form of dividends, any given state would only tax the apportioned share of the parent's income that had not already borne a tax in its state." The Department gives an example, an illustrative chart of which follows:

|  | Non-Nexus Subsidiary | Nexus Subsidiary |
| --- | --- | --- |
| Subsidiary's operating income | $1,000 | $1,000 |
| Average multistate tax rate | 5% | 5% |
| **State A taxes on operating income** | **$50** | **$50** |
| Dividend to Parent (net of taxes) | $950 | $950 |
| Parent's State A apportionment ratio | 20% | 20% |
| **Parent's State A taxable income** | **$190** | **$0** |
| State A tax rate | 5% | 5% |
| **Total State A taxes imposed on dividend from subsidiary** | **$9.50** | **$0** |
| **Total state taxes on subsidiary earnings** | **$9.50** | **$50.00** |

Because the nexus subsidiary pays $50 on its earnings, under the Department's hypothetical, the dividend tax on the $950 paid by a non-nexus subsidiary to the parent, assuming a 20% apportionment ratio, would be subject only to a State A tax of $9.50. Accordingly, "[a]pplication of the internal consistency test across all 50 states using Mississippi's scheme does not result in any unfair apportionment."

31

¶56.    AT&T argues that *General Electric* does not apply. First, in *General Electric*, the dividends in issue were received from foreign subsidiaries, "whereas the Non-Nexus Dividends at issue in the present case are entirely from domestic affiliates." The Department's regulations specifically exclude foreign dividends from the taxpayer's apportionable Mississippi income, classifying them instead as "non-business income." Miss. Admin. Code 35-III-8.06(302.01(5a)). Second, New Hampshire utilized "the water's edge method of apportionment," whereby "the combined income is limited to that derived from domestic members of the unitary group." *Gen. Elec.*, 914 A.2d at 251. According to AT&T, "the present case concerning taxation of domestic dividends would never arise under the New Hampshire law at issue in *General Electric*."

¶57.    Third, AT&T argues that the concerns at issue here, discrimination against interstate commerce and the risk of multiple taxation, were not at issue in General Electric, because discrimination against international commerce was of concern in those cases. *See also Kraft*, 505 U.S. at 71; *Morton Thiokol*, 864 P.2d at 1175; *Du Pont de Nemours*, 675 A.2d at 82. "[T]he Foreign Commerce Clause recognizes that discriminatory treatment of foreign commerce may create problems, such as the potential for international retaliation, that concern the Nation as a whole." *Kraft*, 505 U.S. at 79 (citing *Japan Line, Ltd. v. Los Angeles Cty.*, 441 U.S. 434, 450, 99 S. Ct. 1813, 60 L. Ed. 2d 336 (1979)).

¶58. We agree with AT&T that *General Electric* and the other cases applying the Foreign Commerce Clause do not apply in the present context, in which the allegation is discrimination against interstate commerce.[8]

¶59. The Department next cites the *Ashland* case from this Court to support its argument that the tax in issue here "does not reach beyond that portion of the value that is fairly attributable to economic activity within Mississippi nor does it result in no more than all of the unitary business's income being taxed when hypothetically applied across all states." In *Ashland*, this Court held that "business income" includes dividends from unitary subsidiaries and that Mississippi's apportionment of Ashland's multistate unitary operation was not unconstitutional, since it was not allocated to a particular state and "direct or separate accounting for Mississippi net business income is impossible." *Ashland Pipeline Co. v. Marx*, 623 So. 2d 995, 1001 (Miss. 1993). That case relied on a United States Supreme Court decision which upheld a Vermont scheme by which it taxed an apportioned part of dividend income received by a corporation from its subsidiaries doing business abroad. *Mobil Oil Corp. v. Vt.*, 445 U.S. 425, 429, 100 S. Ct. 1223, 63 L. Ed. 2d 510 (1980). The Court held that Vermont's interest "in taxing a proportionate share of appellant's dividend income" did not violate the Commerce Clause. *Id.* at 446.

¶60. But, as is pointed out by AT&T, neither *Ashland* nor *Mobil Oil* answers the question before this Court at present, which is whether Mississippi possesses the "constitutional ability

---

[8] This finding obviates the need to address AT&T's argument that the concept of "tax symmetry" is "constitutionally meaningless," since all the cases in which the concept is addressed concern application of the Foreign Commerce Clause.

to tax differently two categories of business income that are completely identical except for the geographic footprint of the distributing corporation."

¶61.   As noted above, "[i]nternal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would not also bear." ***Jefferson Lines***, 514 U.S. at 185. In the present case, we find that Section 27-7-15(4)(i) fails the internal consistency test. For while Mississippi offers a dividend exclusion to nexus subsidiaries of AT&T, non-nexus subsidiaries of AT&T do not receive such an exemption, because the dividend income had not already borne a tax under Section 27-7-15(4)(i). The total tax burden on AT&T is disparate because, with regard to AT&T's non-nexus subsidiaries, AT&T bears an additional burden from which its nexus subsidiaries are exempt. Because a non-nexus subsidiary distributes its already-taxed income to the parent as a dividend, the Department then subjects the parent to a second layer of taxation, apportioned on the dividend itself. Nexus subsidiaries are exempt from the second layer of taxation borne by non-nexus subsidiaries.

¶62.   "A failure of internal consistency shows as a matter of law that a State is attempting to take more than its fair share of taxes from the interstate transaction, since allowing such tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax." ***Id.*** As a matter of law, therefore, having determined Section 27-7-15(4)(i) to be internally inconsistent, we hold that its application results in malapportionment and, therefore, that it violates the dormant aspect of the Commerce Clause.

2.      **Whether Mississippi Code Section 27-7-15(4)(i) violates the Due**

34

**Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution.**

¶63. Having ascertained that Section 27-7-15(4)(i) violates the dormant aspect of the Commerce Clause, we decline to address AT&T's companion arguments that the dividend-received exemption violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution.

### 3. Remedy

¶64. Mississippi's severability statute provides that:

> If any section, paragraph, sentence, clause, phrase or any part of any act passed hereafter is declared to be unconstitutional or void, or if for any reason is declared to be invalid or of no effect, the remaining sections, paragraphs, sentences, clauses, phrases or parts thereof shall be in no manner affected thereby but shall remain in full force and effect.
>
> Unless the contrary intent shall clearly appear in the particular act in question, each and every act passed hereafter shall be read and construed as though the provisions of the first paragraph of this section form an integral part thereof, whether expressly set out therein or not.

Miss. Code Ann. § 1-3-77 (Rev. 2014). Absent contrary intent, the rule of severability applies and, when a portion of a statute is declared unconstitutional, the remaining sections continue in effect. ***Oxford Asset Partners, LLC v. Oxford***, 970 So. 2d 116, 125 (Miss. 2007).

¶65. The Department argues that, if the "that has already borne a tax as dividend income under the provisions of this article" language from Section 27-7-15(4)(i) were stricken, Section 27-7-15(1) would be rendered meaningless. It is true that Section 27-7-15(4)(i), without the constitutionally offensive language, would read as follows:

> (4) The words 'gross income' do not include the following items of income which shall be exempt from taxation under this article:

. . .

> (i) Income from dividends when such dividends may be specifically identified in the possession of the recipient.

Miss. Code Ann. § 27-7-15(4)(i). Such exemption then would be contradictory of Section 27-7-15(1), which provides that "the term 'gross income' means and includes the income of a taxpayer derived from . . . dividends . . . ." Miss. Code Ann. § 27-7-15(1). The Department argues that it could not have been the legislature's intent for no tax to be paid on any corporate dividends.

¶66. California courts decided that the appropriate remedy after the dividend-received exemption statute was declared unconstitutional was to declare the statute unconstitutional in its entirety, rather than severing a portion of it. The Department urges this Court to adopt a similar approach. In *Abbott Laboratories v. Franchise Tax Board*, the California Fourth District Court of Appeal considered whether to declare the entire statute unconstitutional, meaning effectively that "no dividends paid by any corporation would receive a deduction." *Abbott Labs. v. Franchise Tax Bd.*, 96 Cal. Rptr. 3d 864, 871 (Cal. App. 4th 2009). Conversely, the court considered whether to sever the constitutionally offensive portions of the statute in issue, meaning effectively that the "dividends received deduction could be extended to dividends paid by all corporations, whether or not they were subject to tax in California." *Id.*

¶67. The court noted that, under California law, "[t]o be severable, '"the invalid provision must be . . . volitionally separable."'" *Id.* at 872 (quoting *Gerken v. Fair Political Practices Comm'n*, 25 Cal. Rptr. 2d 449, 453 (Cal. App. 4th 1993). Volitional separability turns on

36

whether the statute's remainder "'"'is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute" . . . or "constitutes a completely operative expression of the legislative intent[.]"'" ***Abbott Labs.***, 96 Cal. Rptr. 3d at 872 (citing ***Santa Barbara Sch. Dist. v. Superior Court***, 118 Cal Rptr. 637, 650 (Cal. App. 4th 1975)).

¶68.	The court held that "[d]eleting the language imposing this limitation on the [dividend-received] deduction . . . rewrites the statute to give the statute a purpose quite different from the one enacted by the legislature. It therefore ceases to serve the function intended by the legislature." ***Abbott Labs.***, 96 Cal. Rptr. 3d at 873. Because the legislature was more equipped to make such a determination and that severing the statute would affect the statutory purpose intended by the legislature, the court determined that the statute failed the volitional separability test and, therefore, declared the entire statute to be unconstitutional.

¶69.	The court came to the same conclusion in ***River Garden Retirement Home v. Franchise Tax Board***, finding that "[t]o excise the language imposing this limitation on the dividends received deduction would impart a purpose to the statute that is quite different from one enacted by the Legislature." ***River Garden Retirement Home v. Franchise Tax Bd.***, 113 Cal. Rptr. 3d 62, 69 (Cal. App. 4th 2010) (citing ***Abbott Labs.***, 96 Cal. Rptr. at 873-74).

¶70.	Indeed, this Court has applied similar language:

> It is always the court's duty in passing upon the constitutionality of a statute to separate the valid from the invalid parts thereof, if this can be done, and to permit the valid parts to stand unless the different parts of the statute are so intimately connected with and dependent upon each other as to warrant a belief

that the Legislature intended them as a whole and that if all could not be carried into effect it would not have enacted the residue independently.

*In Re Extension of Boundaries of City of Brookhaven*, 217 Miss. 860, 65 So. 2d 832, 833 (1953) (quoting *American Express Co. v. Beer*, 107 Miss. 528, 65 So. 575, 578 (1914)); *see Quinn v. Branning*, 404 So. 2d 1018, 1020 (Miss. 1981); *Lovorn v. Hathorn*, 365 So. 2d 947, 948 (Miss. 1978); *Wilson v. Jones Cty. Bd. of Supervisors*, 342 So. 2d 1293, 1296 (Miss. 1977).

¶71. The Department argues that striking the "that has already borne a tax as dividend income under the provisions of this article" language in the in-state dividend exemption of Section 27-7-15(4)(i) would render meaningless the inclusion of "gross income" of "dividends" in Section 27-7-15(1). As such, the Department argues that Section 27-7-15(4)(i) should be severed in its entirety. That way, the dividend-received exclusion would no longer be available to any taxpayer, irrespective of whether that taxpayer was a nexus or non-nexus subsidiary of AT&T.

¶72. We note that the Department, while it raised the issue of remedy below, did so only in its reply brief before this Court. AT&T filed a Motion to Strike Portion of Appellant's Reply Brief or, Alternatively, for Leave to File Surreply. This Court, on March 8, 2016, denied the motion to strike, but accepted as filed AT&T's proposed surreply brief. In its surreply brief, AT&T argues that Section 27-7-15(4)(i) should be altered in the following manner:

> (4) The words "gross income" do not include the following items of income which shall be exempt from taxation under this article:

> . . .

> > (i) Income from dividends that has already borne a tax as dividend income when such dividends may be specifically identified in the possession of the recipient.

Miss. Code Ann. § 27-7-15(4)(i).

¶73. AT&T argues that limitation of the exemption to dividends having "already borne a tax as dividend income *under the provisions of this article*" creates a constitutional problem because it creates a geographic distinction between those subsidiaries which have paid tax in Mississippi and those which have not, thus discriminating against out-of-state subsidiaries. Striking only the suggested language, according to AT&T, would at once prevent the constitutional infirmity and preserve the intent of the legislature in taxing dividend income, giving an exemption only to taxpayers whose dividend income already has been taxed in Mississippi or in any other state.[9]

¶74. AT&T observes that the 1934 version of the dividend-received exemption excluded "[i]ncome received during the taxable year as dividends from a corporation on which such corporation has already paid or is liable by assessment to pay an income tax," irrespective of where such tax was paid. 1934 Miss. Laws Ch. 120, § 1. Likewise, the 1936 version excluded "[i]ncome received during the taxable year in the form of dividends paid by corporations to the extent that such corporation has already paid, or is liable by assessment to pay an income tax on the income from which such dividends were declared." 1936 Miss.

---

[9] AT&T gives the following example: "if the subsidiary's earnings were generated in one of the states that does not impose a corporate income tax, such as Nevada, South Dakota, or Wyoming, those earnings would not have borne an income tax at the subsidiary level and Section 27-7-15(4)(i) would not shield them from Mississippi's tax."

Laws Ch. 151, § 1. In 1942, the language was changed to exclude "[i]ncome from dividends that has already borne a tax as dividend income under the provisions of this act, when such dividends may be specifically identified in the possession of the recipient." 1942 Miss. Laws Ch. 125, § 1. That change, of course, occurred well in advance of much of the Commerce Clause jurisprudence upon which this Court now relies and, as AT&T states, "produced a tax scheme that discriminated against interstate commerce and resulted in multistate double taxation."

¶75.    AT&T's suggested severance of Section 27-7-15(4)(i) falls somewhere in between the Department's suggested severance, which would eliminate the exclusion altogether for all taxpayers, and the interpretation about which the Department has expressed concern, which would exempt all taxpayers from paying tax on dividend income. Striking the "under the provisions of this article" language preserves legislative intent in including dividend income in the definition of income, but at the same time allows an exemption to those taxpayers who already have borne a tax in Mississippi or another state.

**CONCLUSION**

¶76.    Having determined that the geographical limitation in Section 27-7-15(4)(i) offends the negative aspect of the Commerce Clause of the United States Constitution, we hold that portion of it to be unconstitutional and invalid. The phrase "under the provisions of this article" hereby is struck from Section 27-7-15(4)(i) and such severance shall be applied to AT&T for the tax years in issue. The judgment of the Chancery Court of the First Judicial District of Hinds County is affirmed.

¶77.   **AFFIRMED.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, KING, COLEMAN AND BEAM, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.  RANDOLPH, P.J., NOT PARTICIPATING.**